# In the

# United States Court of Appeals

## For the Seventh Circuit

Nos. 10-1682, 10-1793 & 10-2579

TRUSTEES OF THE CARPENTERS' HEALTH AND
WELFARE TRUST FUND OF ST. LOUIS,

*Plaintiff-Appellee,*

*Cross-Appellant,*

*v.*

LANNY HOWARD DARR, II, et al.,

*Defendants-Appellants,*

*Cross-Appellees.*

Appeals from the United States District Court
for the Southern District of Illinois.
No. 3:10-cv-00130-DRH-CJP—**David R. Herndon**, *Chief Judge.*

ARGUED NOVEMBER 30, 2010—DECIDED AUGUST 21, 2012

Before KANNE, WILLIAMS, and TINDER, *Circuit Judges.*

TINDER, *Circuit Judge.* A federal court may not enjoin "proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. This law, known as Anti-Injunction

Act, represents "a necessary concomitant of the Framers'
decision to authorize, and Congress' decision to imple-
ment, a dual system of federal and state courts." *Smith
v. Bayer Corp.*, 131 S. Ct. 2368, 2375 (2011) (quoting *Chick
Kam Choo v. Exxon Corp.*, 486 U.S. 140, 146 (1988)). Under
the Act's broad command that state tribunals "shall
remain free from interference by federal courts," *id.*
(quoting *Atl. Coast Line R.R. v. Locomotive Eng'rs*, 398
U.S. 281, 282 (1970)), "the Act's core message is one of
respect for state courts," *id.* Any doubts about the Act's
"three specifically defined exceptions," *id.* (quoting *Atl.
Coast Line*, 398 U.S. at 286), ought to "be resolved
in favor of permitting the state courts to proceed," *id.*
(quoting *Atl. Coast Line*, 398 U.S. at 297).

The district court enjoined an attorney and his clients
from pursuing an Illinois state court claim against an
employee health and welfare benefit plan governed by
the 1974 Employee Retirement Income Security Act
(ERISA). Because the injunction against this state court
lawsuit does not qualify under an exception to the Anti-
Injunction Act, we order the injunction vacated.

## I. Background

James Miller, a beneficiary of the Carpenters' Health and
Welfare Trust Fund of St. Louis (the "Fund"), fell from
a ladder resting on a pickup truck bed and injured his
back. He secured the services of Illinois attorney Lanny
Darr to represent him and his wife Kim Miller in a
lawsuit seeking recovery from a third party (namely, the

person who was supposed to hold the ladder steady) allegedly responsible for the accident. The Millers' agreement with Darr provided a contingent fee of one-third of any recovery before deducting medical expenses. The Fund advanced the Millers $86,709.73 in medical and disability benefits in connection with this injury on the condition that the Millers repay this advance from any recovery without deducting for attorneys' fees. In fact, James, along with Darr, signed a subrogation agreement allowing the Fund to pay his medical expenses in exchange for an assignment of any third-party recovery up to the amount advanced and undiminished by any deduction per the Fund's governing document (the "Plan"). The Millers' lawsuit ended up settling for $500,000, but this case isn't about James Miller's injury; this case is about attorneys' fees.

The Millers and Darr distributed the settlement proceeds by deducting Darr's fee based on only $413,290.27 instead of the full $500,000, a difference equal to what the Millers owed the Fund. Darr submitted $57,806.48 to the Fund from the Millers' settlement, told the Fund that he was withholding the remaining one-third ($28,903.25 as a fee), and noted that he was willing to tender the remainder to avoid jeopardizing the Millers' benefits. Yet Darr maintained that such payment would not resolve the dispute between his firm and the Fund. Darr later tendered the $28,903.25 amount to the Fund and wrote that the Millers "requested I send you full payment on his behalf so his future benefits are not in jeopardy." Darr also asserted in that letter that his law firm held a $28,903.25 claim against the Fund. The

Fund responded that if Darr pursued his claim they would consider Darr and the Millers in breach of Plan terms and in repudiation of their promise in the subrogation agreement to abide by Plan terms and that the Fund would consider terminating the Millers' coverage and seeking relief in federal court under ERISA.

Darr's law firm proceeded to sue the Fund in Illinois state court to recover the $28,903.25 under the common fund doctrine, which permits a party (Darr's firm) who creates a fund (the $500,000 settlement) in which others (the Fund) have an interest (the Fund's reimbursement) to obtain reimbursement from the fund for litigation expenses (Darr's fee) incurred in creating that fund (Darr's representation on the Millers' behalf). *E.g., Scholtens v. Schneider*, 671 N.E.2d 657, 662 (Ill. 1996). In response, the Fund's Trustees sued Darr and the Millers in federal court to enjoin Darr from pursuing his state claim. The Trustees sought in alternative counts a construction and declaration under express trusts that Darr and the Millers owed the Fund an amount equal to any judgment Darr obtained in state court along with the Trustees' attorneys' fees. The district court issued a temporary restraining order against Darr's suit, held a hearing, entered a permanent injunction against Darr's lawsuit, and dismissed with prejudice the alternative counts. *Trs. of Carpenters' Health & Welfare Trust Fund v. Darr*, No. 10-0130-DRH, 2010 WL 850171, at *3-4 (S.D. Ill. Mar. 5, 2010). The court later awarded the Trustees their fees and costs in the federal court case but not in the state court case. *Trs. of Carpenters' Health & Welfare Trust Fund v. Darr*, No. 10-0130, 2010 WL 2607392, at *3 (S.D. Ill. June 24, 2010). Darr

appeals the injunction and the fees and costs award and the Fund conditionally cross-appeals the alternative counts' dismissal.

## II. Analysis

District courts "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. A case arises under federal law if "'a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'" *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 689-90 (2006) (quoting *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 27-28 (1983)); *see also Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744, (2012) (long recognized that a "suit arises under the law that creates the cause of action" (quoting *Am. Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260 (1916))); *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005) (§ 1331 satisfied by pleading "a cause of action created by federal law").

Darr challenges the district court's jurisdiction on a variety of grounds, *e.g.*, *Miller v. Herman*, 600 F.3d 726, 731 (7th Cir. 2010) (noting common conflation of "jurisdictional and non-jurisdictional" limits), but his only real jurisdictional argument is that federal courts lack jurisdiction when a state court defendant raises ERISA preemption as a basis for federal jurisdiction under the well-

pleaded complaint rule. *See Primax Recoveries, Inc. v. Sevilla*, 324 F.3d 544, 548 (7th Cir. 2003); *Speciale v. Seybold*, 147 F.3d 612, 616-17 (7th Cir. 1998); *Blackburn v. Sundstrand Corp.*, 115 F.3d 493, 495 (7th Cir. 1997). Darr misses the jurisdictional basis of the Trustees' claim; it arises not as a defense to his state claim but under a federal law, § 502(a)(3), that created a federal remedy the Trustees seek to employ in a federal court. ERISA fiduciaries may bring claims under § 502(a)(3)(A)[1] of ERISA "to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3). The Trustees, as ERISA fiduciaries, seek to do just that—enjoin an act they claim violates Plan terms. *See Sereboff v. Mid Atl. Med. Servs., Inc.*, 547 U.S. 356, 363 (2006) (fiduciaries may bring § 502(a)(3) claims "*to enforce plan terms*"). Thus, the district court's jurisdiction is secure. *See Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96 n.14 (1983) (federal courts have § 1331 jurisdiction to grant "injunctive relief from state regulation, on the ground that such regulation is pre-empted by a federal statute"); *Stone & Webster Eng'g Corp. v. Ilsley*, 690 F.2d 323, 327-28 (2d Cir. 1982) (claim for an injunction on grounds that ERISA preempted a state law was "not merely a defense," but a suit for "affirmative and coercive relief" enjoining state law's enforcement), *aff'd sub nom. Arcudi v. Stone & Webster Eng'g*

---

[1] We use the "§ 502(a)(3)" citation from the Statutes at Large but the citation to the United States Code is 29 U.S.C. § 1132(a)(1)(B), although Congress has yet to enact title 29 into positive law. *See* 1 U.S.C. § 204 note.

*Corp.*, 463 U.S. 1220 (1983). We proceed then to the next barrier Darr raises to the district court's judgment, the Anti-Injunction Act.[2]

We review de novo the scope of the Anti-Injunction Act's exceptions. *Zurich Am. Ins. Co. v. Superior Court for State of Cal.*, 326 F.3d 816, 824 (7th Cir. 2003). The law states that:

> A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

28 U.S.C. § 2283. The Anti-Injunction Act, in existence in some form since 1793, *see Chick Kam Choo*, 486 U.S. at 146 (citing Act of Mar. 2, 1793, ch. 22, § 5, 1 Stat. 335), ensures "the fundamental constitutional independence of the States, . . . under which state proceedings 'should normally be allowed to continue unimpaired by intervention of the lower federal courts,' " *id.* (quoting *Atl. Coast Line*, 398 U.S. at 287). As such, we interpret the Anti-Injunction Act's exceptions narrowly. *Id.*

The first exception addresses injunctions "expressly authorized by Act of Congress." ERISA § 502(a)(3)(A) does

---

[2] The Anti-Injunction Act is not jurisdictional; rather, it restricts a district court's remedial authority. *See Ark. Blue Cross & Blue Shield v. Little Rock Cardiology Clinic, P.A.*, 551 F.3d 812, 818 (8th Cir. 2009); *see also Smith v. Apple*, 264 U.S. 274, 278-79 (1924).

not "expressly" say anything about enjoining state court suits. Although we won't rule out that § 502(a)(3) may operate as an express authorization in certain circumstances, *see Gilbert v. Burlington Indus., Inc.*, 765 F.2d 320, 329 (2d Cir. 1985) (enjoining state lawsuit over benefits expressly authorized); *Gen. Motors Corp. v. Buha*, 623 F.2d 455, 459 (6th Cir. 1980) (ERISA expressly authorized injunction against state suit over payment of benefits because "action in a state court will have the effect of making it impossible for a fiduciary of a pension plan to carry out its responsibilities under ERISA"); *Marshall v. Chase Manhattan Bank*, 558 F.2d 680, 683 (2d Cir. 1977) (Anti-Injunction Act not intended to hamstring use "of federal courts to protect federal rights"), we agree with the Fourth Circuit that § 502(a)(3)(A) does not expressly authorize injunctions against state courts unless the state court suit "will have the effect of *making it impossible for a fiduciary of a pension plan to carry out its responsibilities under ERISA*." *Emp'rs Res. Mgmt. Co. v. Shannon*, 65 F.3d 1126, 1132 (4th Cir. 1995) (quoting *Buha*, 623 F.2d at 459); *Denny's, Inc. v. Cake*, 364 F.3d 521, 529 n.9 (4th Cir. 2004) (clarifying *Shannon* as holding that exceptions to the Anti-Injunction Act are narrow). Although the district court here found that Darr's state court lawsuit would force the Trustees to pay a portion of Darr's fee in violation of Plan terms, *Trustees*, 2010 WL 850171, at *3, this hardly makes it impossible for the Trustees to carry out their ERISA responsibilities. Congress gave ERISA trustees multiple tools to carry out their ERISA duties, *see, e.g.,* 29 U.S.C. § 1132(a)(3), and although an injunction against plan violations is certainly

one of them, *id.* § 1132(a)(3)(A), not every violation of plan documents is sufficient to override the basic rule, embodied in the Anti-Injunction Act and the cases interpreting it, that it is seldom appropriate for federal courts to enjoin state court proceedings.

Darr's state court common fund claim for attorneys' fees is too removed from the core federal interests represented by ERISA. *Compare Gilbert*, 765 F.2d at 329 (enjoining state lawsuit over employee benefits expressly authorized), *Buha*, 623 F.2d at 459 (finding it central to ERISA's statutory scheme that it "not be subject to state and local laws which might frustrate its goals" of providing "a uniform and systematic framework for regulation of employee benefit plans"), *and Marshall*, 558 F.2d at 683 (ERISA's superior federal interest vindicated by injunction against state court proceedings to terminate a pension benefit plan), *with 1975 Salaried Ret. Plan for Eligible Emp. of Crucible, Inc. v. Nobers*, 968 F.2d 401, 410 (3d Cir. 1992) (injunction against state court contract suit not expressly authorized because the state claim would not "force the plans to violate *substantive* ERISA law," transfer plan assets, or prevent ERISA compliance), *and Total Plan Servs., Inc. v. Texas Retailers Ass'n, Inc.*, 925 F.2d 142, 145-46 (5th Cir. 1991) (injunction against state court pension and fiduciary claims not expressly authorized simply because state court may lack jurisdiction under ERISA). As noted in a related context, run-of-the-mill state court lawsuits, "although obviously affecting and involving ERISA plans and their trustees, are not pre-empted by ERISA" when they involve unpaid rent, a failure to pay creditors,

or even commonplace torts. *Mackey v. Lanier Collection Agency & Serv., Inc.*, 486 U.S. 825, 833 (1988). Darr's common fund suit, although certainly involving the Fund's finances, does not directly involve the recovery of benefits. *See id.* at 832.

Although the Supreme Court has yet to address whether and when ERISA § 502(a)(3)(A) expressly authorizes injunctions against state court proceedings, we find support from its two cases directly addressing the "expressly authorized" exception. In *Mitchum v. Foster*, the Supreme Court noted that a law "need not contain an express reference" to the Anti-Injunction Act. 407 U.S. 225, 237 (1972). Instead, the law "must have created a specific and uniquely federal right or remedy, enforceable in a federal court of equity, that could be frustrated if the federal court were not empowered to enjoin a state court proceeding." *Id.* at 237. The Court stated that the test for determining whether a law expressly authorized an injunction was whether the congressionally created federal right or remedy "could be given its intended scope only by the stay of a state court proceeding." *Id.* at 238. The Court then found that 42 U.S.C. § 1983, authorizing suits "in equity to redress the deprivation under color of state law 'of any rights, privileges, or immunities secured by the Constitution . . .,'" qualified as "expressly authorized." *Id.* at 243. Although we have interpreted *Mitchum*'s holding as "limited to violations of the Constitution for which § 1983 supplies a remedy, and then only when the state litigation is itself the violation of the Constitution," *Hickey v. Duffy*, 827 F.2d 234, 240 (7th Cir. 1987), we note

that *Mitchum*'s test—whether the federal law "could be given its intended scope only by the stay of a state court proceeding," 407 U.S. at 238—supports our holding here. *See 1975 Salaried Retirement Plan*, 968 F.2d at 410 ("ERISA can be given its intended scope without enjoining" a state contract suit).

In the Court's only other case addressing the Anti-Injunction Act's "expressly authorized" exception, *Vendo Co. v. Lektro-Vend Corp.* held that antitrust laws expressly authorize injunctions against state court lawsuits if, and only if, the state court suit itself violates the antitrust law. 433 U.S. 623, 643-44 (1977) (Blackmun, J., concurring in the result). A plurality in *Vendo* found that § 16 of the Clayton Act could not expressly authorize an injunction because it was "not an 'Act of Congress . . . (which) could be given its intended scope only by the stay of a state court proceeding.'" *Id.* at 632 (quoting *Mitchum*, 407 U.S. at 238). But Justice Blackmun with Chief Justice Burger, authored the controlling opinion and held that § 16 could expressly authorize an injunction against a state court lawsuit when the proceeding was "part of a 'pattern of baseless, repetitive claims' that are being used as an anticompetitive device," the traditional prerequisites for equitable relief were satisfied, and staying the state court lawsuit was the "only way to give the antitrust laws their intended scope." *Id.* at 644 (quoting in part *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 513 (1972)). The concurrence controls because it took the narrowest ground to decide the case. *Village of Bolingbrook v. Citizens Utilities Co.*, 864 F.2d 481, 483 (7th Cir. 1988); *see also*

*United States v. Dixon*, No. 11-3802, ___ F.3d ___, 2012 WL 2913732, at *3 (7th Cir. July 18, 2012) (the reasoning that provides "the narrowest, most case-specific basis for deciding" a case "states the controlling law"). Thus, the costs of raising antitrust defenses in state court aren't enough to justify an injunction; except when the cost itself creates an antitrust violation. *See Village of Bolingbrook*, 864 F.2d at 483-84. When a federal plaintiff can present its federal defenses in state court, and could recoup its damages either through the state court litigation or a separate federal suit, federal policies aren't thwarted. *Id.*

Here, in the ERISA context, Darr's state suit does not prevent the Trustees from fulfilling their duties under ERISA. The findings in support of the injunction rested on ERISA's mandate that the Plan creates contractual rights and obligations and that the Fund must be administered according to the Plan's terms notwithstanding contrary state law or federal common law. *Trustees*, 2010 WL 850171, at *2 (citing 29 U.S.C. § 1104(a); *Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*, 555 U.S. 285 (2009)). The district court found that Darr's state suit would, if successful, require the Fund's administrator to violate Plan terms shifting attorneys' fees to beneficiaries. *Id.* at *3. That the Millers fully reimbursed the Fund, leaving Darr with a common fund claim, was "a distinction without a difference" because in the end, the Fund would still pay his fee ("now rather than earlier"). *Id.* These findings, showing Darr as essentially attempting to collaterally attack the Plan's terms, do not support a finding that Darr's suit prevents the

Trustees from fulfilling their core ERISA duties. The Trustees are not precluded from presenting their federal defense in the state court suit and they may seek damages for whatever injury caused by Darr's suit if the state court rejects their defenses. *Village of Bolingbrook*, 864 F.2d at 484 ("When the opportunity to present the federal defense to state court, coupled with the opportunity to receive damages, carries out all federal policies, then § 2283 forbids injunctive remedies.").

We recognize that Darr's state court claim seeks to circumvent both the Fund's attempt to use Plan's terms to shift the costs of recovering from third parties onto beneficiaries and the Trustees' statutory duty to administer ERISA plans "in conformity with the plan documents." *Kennedy*, 555 U.S. at 299-300. And we also recognize that, obviously, federal law may displace conflicting state priorities, *cf. Marmet Health Care Ctr., Inc., v. Brown*, 132 S. Ct. 1201, 1203 (2012) (per curiam) (Federal Arbitration Act), but that does not mean an injunction should issue in this case where the federal interest can be vindicated without it. *See Village of Bolingbrook*, 864 F.2d at 483. An ERISA plan may try to shift the costs of third-party recoveries, *compare Admin. Comm. of Wal-Mart Stores, Inc. Associates' Health & Welfare Plan v. Varco*, 338 F.3d 680, 690 (7th Cir. 2003) (plan terms requiring reimbursement without attorneys' fees deduction trump Illinois's common fund doctrine), *with Primax*, 324 F.3d at 548-49 (lawyers entitled to get paid for their work even if plan rejected the common fund doctrine); *Wal-Mart Stores, Inc. Associates' Health & Welfare Plan v. Wells*, 213 F.3d 398, 402 (7th Cir. 2000) (plan

terms contrary to common fund concept allow for "the plan to free ride on the efforts of the plan participant's attorney"); *Blackburn*, 115 F.3d at 496 (common fund doctrine "may even increase the plan's recoveries in the long run"), but plan terms about a matter tangential to core federal interests are not a sufficient basis for an injunction against a state law claim simply because the state law claim may trigger a liability the plan intended to place on beneficiaries.

We note that in other contexts, courts have found injunctions "expressly authorized" when Congress provided a federal remedy for attacks on federal prerogatives that are absent in Darr's state suit over attorneys' fees. *Compare In re BankAmerica Corp. Secs. Litig.*, 263 F.3d 795, 803 (8th Cir. 2001) (injunction against state claim "only means available to" give the rights in the Private Securities Litigation Reform Act's "their intended scope" when "state-court plaintiff" wins race to courthouse), *Stockslager v. Carroll Elec. Co-op. Corp.*, 528 F.2d 949, 952 (8th Cir. 1976) (injunction against state court proceedings in derogation of federal requirement "to carry out the national environmental policy" expressly authorized by National Environmental Policy Act because the law authorized "all practicable means" (quoting 42 U.S.C. § 4331(a)), *Tampa Phosphate R.R. v. Seaboard Coast Line R.R.*, 418 F.2d 387, 394 (5th Cir. 1969) (Interstate Commerce Act authorized injunction against state condemnation proceedings that went against "paramount federal interests"), *and Studebaker Corp. v. Gittlin*, 360 F.2d 692, 697-98 (2d Cir. 1966) (§ 21(e) of the Securities Exchange Act (SEA) expressly authorized injunctions

because the state claim furthered SEA violation), *with Casa Marie, Inc. v. Superior Court of P.R. for Dist. of Arecibo*, 988 F.2d 252, 261-62 (1st Cir. 1993) (vesting concurrent jurisdiction over Title VIII claims "a vote of confidence" in state courts), *Jennings v. Boenning & Co.*, 482 F.2d 1128, 1131 (3d Cir. 1973) (§ 21(e) of SEA not an express authorization because the state claim "did not constitute an impediment to the assertion of 'the federal right or remedy'" and did not further "an ongoing violation"), *and Clean Air Coordinating Comm. v. Roth-Adam Fuel Co.*, 465 F.2d 323, 326 (7th Cir. 1972) (Clean Air Act not an express authorization because the "federal domain is not exclusive" when states maintain primary responsibility for air quality). Given the Anti-Injunction Act's requirement that a federal law "expressly" authorize an injunction against a state court suit and its foundation in the "fundamental constitutional independence of the States," *Chick Kam Choo*, 486 U.S. at 146, we find an injunction against Darr's state court common fund claim outside the expressly authorized exception.

The Trustees argue in the alternative that enjoining Darr's state court claim fits the exception for injunctions "where necessary in aid of" the district court's jurisdiction. 28 U.S.C. § 2283. This exception applies when a federal court acquires jurisdiction, prior in time to the state-court action, over a case involving the disposition of a res. *See Vendo*, 433 U.S. at 641-42. The Trustees maintain that because the Fund's money is held in a trust, and the alternative counts of their complaint ask for the district court to determine and declare the Trustees' and the Millers' rights and obligations

under the trust, the district court acquired in rem jurisdiction over the trust's res. Setting aside the Trustees' alternative counts, Darr's state suit preceded the Trustees' federal suit precluding this exception's application to Darr's state court claim.

The Trustees don't argue that the injunction fits the Anti-Injunction Act's third exception for protecting or effectuating the district court's judgments but they do ask us to find that the Anti-Injunction Act doesn't apply to them because they are strangers to Darr's state court suit against the Fund. *See Hale v. Bimco Trading*, 306 U.S. 375, 377-78 (1939) (predecessor to Anti-Injunction Act did not bar injunction because enforcement was against strangers to state court suit who were not bound "as though he were a party to the" state court litigation); *Imperial Cnty., Cal. v. Munoz*, 449 U.S. 54, 59-60 (1980) (requiring application of *Hale*'s strangers doctrine). Yet in Illinois, trustees in their representative capacity are the same entity as the trust. *See Sullivan v. Kodsi*, 836 N.E.2d 125, 131 (Ill. App. Ct. 2005) (finding state court jurisdiction over trustee because trust "can sue or be sued through its trustee in a representative capacity on behalf of the trust"). Finding the Trustees strangers to the state suit would also ignore reality. The Trustees told the district court that they knew that Darr's state court proceeding would "be enforced against us," Doc. 63 at 13, and acknowledge on appeal that even though Darr sued the Fund, it was "virtually certain" they would soon be made parties to the case. Br. of Appellee at 12.

* * *

We VACATE the district court's judgments enjoining Darr's state court lawsuit and ordering him pay the Trustees' fees and costs, GRANT the Trustees' cross-appeal seeking reinstatement of their alternative counts, and REMAND for the district court's consideration in the first instance.