> **NONPRECEDENTIAL DISPOSITION**
> To be cited only in accordance with
> Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted March 29, 2013[*]
Decided May 21, 2013

**Before**

WILLIAM J. BAUER, *Circuit Judge*

RICHARD A. POSNER, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 12-3614

| | |
|---|---|
| MICHAEL BOND, | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Eastern District of Wisconsin. |
| *v.* | No. 12-C-1050 |
| JPMORGAN CHASE BANK, N.A., | Rudolph T. Randa, |
| *Defendant-Appellee.* | *Judge.* |

## O R D E R

Michael Bond appeals from an order denying a preliminary injunction in his suit against JPMorgan Chase Bank (incorrectly named in Bond's complaint as Chase Home Finance LLC). This litigation ostensibly arises under the Fair Housing Act, 42 U.S.C. §§ 3601–31, but Bond, a squatter in a house owned by Chase, wanted the district court to enjoin Chase from executing an order from a Wisconsin court authorizing his eviction. Because the underlying claims are frivolous, we affirm the decision.

---

[*] After examining the briefs and record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and record. *See* FED. R. APP. P. 34(a)(2)(C).

Bond rented a house from Randa Cistrunk, who owned the property subject to a mortgage held by Chase. Cistrunk, Bond, and nine codefendants were arrested in June 2010 and charged in the Eastern District of Wisconsin with conspiring to possess and distribute marijuana. *See* 21 U.S.C. §§ 846, 841(a)(1). That criminal case is before Judge Clevert.[1] Bond, who since has pleaded guilty and admitted relevant conduct of at least 100 kilograms, had been released on bond in January 2011 and permitted to reside, not in the house rented from Cistrunk (who is in prison), but with his sister in her Milwaukee home. Meanwhile, in March 2011 Chase filed a foreclosure action for Cistrunk's property in the Milwaukee County Circuit Court. A judgment of foreclosure was entered in August 2011, and Chase then purchased the property at a sheriff's sale in April 2012 for around $130,000.

At the time of the sheriff's sale, Bond was awaiting sentencing (and still is). Yet he offered to buy the property from Chase for the amount paid by the bank, if the bank would accept a $20,000 down payment and his note for the balance. Chase declined that offer from Bond, who faces a statutory minimum sentence of five years in prison and claims to be living on the "charity" of family members. The bank did counter with a proposal, however, to sell Bond the property for $130,000 in cash. When Bond rejected that counteroffer, Chase initiated eviction proceedings in the circuit court. In October 2012 the bank obtained a Writ of Assistance authorizing the county sheriff to forcibly remove Bond, who no longer has a lease and is not paying rent. In fact, records from Bond's criminal case show that he is required to live elsewhere: From January to September 2011 the conditions of Bond's release dictated that he live with his sister, and in September 2011 Judge Clevert granted his request for permission to move to his niece's house while he awaits his June 2013 sentencing. Another condition of Bond's release is "home detention," which restricts him to the designated residence except for reasons authorized by the court. In Bond's appellate brief, however, he asserts that he currently lives alone in the house now owned by Chase.

Bond brought this lawsuit in the Eastern District of Wisconsin in October 2012, and the case was assigned to Judge Randa. In his amended complaint Bond alleges that Chase discriminated against him by refusing to sell him the property at the same price the bank would sell to another buyer, in violation of the Fair Housing Act. Bond asserts that the bank's asking price far exceeds the fair market value of the property, and he speculates that Chase is demanding the price paid at the sheriff's sale because the bank assumes that Bond will have difficulty finding another place to live and would overpay just to stay where he is. Bond also included a claim under 42 U.S.C. § 1983, alleging that Chase's actions violated his rights under the First, Fourth, Fifth, and Fourteenth Amendments.

---

[1] The facts recited here are drawn from Bond's amended complaint and attachments, as well as records from his criminal case. *See United States v. Bond*, No. 10-CR-117 (E.D. Wis. filed June 9, 2010). We have taken judicial notice of the criminal proceedings. *See Keller v. United States*, 657 F.3d 675, 679 n.2 (7th Cir. 2011); *Opoka v. I.N.S.*, 94 F.3d 392, 394 (7th Cir. 1996).

Along with his complaint Bond also filed a motion seeking a preliminary injunction to stop his eviction. As we understand Bond's motion, he wanted the district court to enjoin Chase from executing its Writ of Assistance. That also is how Chase read the motion, but Judge Randa thought that Bond wanted the court to enjoin the state-court eviction proceeding. In denying Bond's motion, the judge reasoned that Bond had not shown that his lawsuit is likely to succeed on the merits: The § 1983 claim fails because Chase is not a state actor, and Bond's claim under the Fair Housing Act cannot succeed because he does not allege conduct by Chase that would be unlawful. The judge also reasoned that the harm to Chase from stalling Bond's eviction would outweigh any harm to Bond. Bond filed an immediate appeal, *see* 28 U.S.C. § 1292(a), and he says in his appellate brief that sheriff's deputies who tried to execute the Writ of Assistance departed the premises when he showed them a copy of his notice of appeal.

We agree with Judge Randa that Bond's case for preliminary relief is without merit, and it makes no difference whether his motion was targeted at Chase or the state court. Bond's lawsuit is frivolous and should have been dismissed with prejudice for failure to state a claim, and for the same reason his request for preliminary relief is frivolous. On appeal Bond does not even argue that his lawsuit has a chance of succeeding on the merits, *see Stuller*, *Inc. v. Steak N Shake Enters., Inc.*, 695 F.3d 676, 678 (7th Cir. 2012), and instead he proclaims that "possession is nine-tenths of the law" and asserts that Chase is "attempting to extort him out of money they falsely believe he has" from marijuana trafficking. Bond's § 1983 claim is a nonstarter because Chase is not a state actor and did not act under color of state law when it refused to accept his offer to purchase the property. *See Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999); *Gayman v. Principal Fin. Servs., Inc.*, 311 F.3d 851, 852–53 (7th Cir. 2002). And his claim under the Fair Housing Act fares no better. The Act provides that it is unlawful to "refuse to sell or rent" a dwelling, "after the making of a bona fide offer," on account of a protected status, including disability, 42 U.S.C. § 3604(a), (f), but Bond's amended complaint says nothing which raises a plausible inference that he is a member of a protected class under the Act. *See Hamilton v. Svatik*, 779 F.2d 383, 387 (7th Cir. 1985). He does assert that he is "disabled," but he does not allege that Chase was aware of that disability (which Bond does not identify) or that the bank's unwillingness to accept Bond's terms was related in any way to his disability. Rather, Bond explicitly contends that Chase refused his offer to buy on credit because the bank believes that all drug dealers are flush with cash and prone to overpay, and that his personal difficulties would make overpaying more attractive than finding a new place to live. That theory is nonsense but would not violate that Act even if true.

Because Bond cannot succeed on the merits of his claims under § 1983 or the Fair Housing Act, we need not explore the remaining criteria for a preliminary injunction. *See Kiel v. City of Kenosha*, 236 F.3d 814, 817 (7th Cir. 2000); *Thornton v. Barnes*, 890 F.2d 1380, 1390 (7th Cir. 1989). For completeness, though, we note that the district court probably was powerless to grant the requested preliminary relief if, as Judge Randa believed, Bond

wanted the court to enjoin the state court rather than Chase. The Anti–Injunction Act bars a federal court from enjoining ongoing state-court proceedings, except "as expressly authorized by an Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283; *see Mitchum v. Foster*, 407 U.S. 225, 229 (1972). The Act reflects the "fundamental constitutional independence of the States" and recognizes that state proceedings ordinarily should "continue unimpaired by intervention of the lower federal courts." *Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 287 (1970); *see Zurich Am. Ins. Co. v. Sup. Ct. of State of Cal.*, 326 F.3d 816, 824 (7th Cir. 2003). As a result, the three exceptions are applied narrowly, and "doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy."*Atl. Coast Line R.R. Co.*, 398 U.S. at 297; *see Trs. of Carpenters' Health and Welfare Trust Fund of St. Louis v. Darr*, 694 F.3d 803, 807 (7th Cir. 2012).

No exception to the Anti-Injunction Act would appear applicable to the Fair Housing Act. Only the exception for injunctive relief "expressly authorized" by Congress warrants discussion. The Fair Housing Act has no *obvious* language expressly authorizing a federal court to enjoin a state court proceeding, but that does not resolve the question. *See Mitchum*, 407 U.S. at 237. To determine whether Congress inferred the exception to apply, we ask whether the Fair Housing Act "created a specific and uniquely federal right or remedy, enforceable in a federal court of equity" and whether that right or remedy can be "given its intended scope only by the stay of a state court proceeding." *Id.* at 237–39. The Fair Housing Act is enforceable in both state and federal courts, *see* 42 U.S.C. § 3613(a)(1)(A), and the First Circuit has concluded that "the vesting of concurrent jurisdiction would seem to imply a vote of confidence in the integrity and competence of state courts to adjudicate" these claims. *Casa Marie, Inc. v. Sup. Ct. of Puerto Rico for the Dist. of Arecibo*, 988 F.2d 252, 262 (1st Cir. 1993). Given the general rule that interpretations of the Anti-Injunction Act's exceptions should err in favor of permitting the state courts to proceed, *see Trs. of Carpenters' Health and Welfare Trust Fund of St. Louis*, 694 F.3d at 810–11, we are inclined to agree with the First Circuit's analysis. Thus, had Bond requested an injunction staying the eviction proceedings, we think it unlikely that the court would have been permitted to grant him that relief. But because his underlying claims are frivolous, we need not decide this question here.

On a final note, Bond's allegations in this civil litigation suggest that he is violating the conditions of his release in the criminal case before Judge Clevert by not residing at his niece's house as he awaits sentencing. Accordingly, we direct the clerk of this court to send a copy of this order to the United States Attorney for the Eastern District of Wisconsin.

**AFFIRMED**.