JOSEPH LEMMER, Plaintiff-Appellant, *v.* GARY KARP, Defendant-Appellee.— (HARTFORD INSURANCE COMPANY, Appellee.)

Second District   No. 76-57

Opinion filed December 30, 1977.

Lloyd J. Tyler, of Tyler, Peskind & Solomon, of Aurora, for appellant.

Juergensmeyer, Zimmerman & Smith, of Elgin, for appellee.

Mr. JUSTICE BOYLE delivered the opinion of the court:

Joseph Lemmer, hereinafter "plaintiff," brought an action for injuries against the defendant, Gary Karp. After an arbitration hearing, plaintiff was awarded $7,750 in settlement of his action.

Prior to this settlement, on plaintiff's motion, an order was entered denying all lien rights of plaintiff's insurer, Hartford Insurance Company (hereinafter "Hartford"). Thereafter, the trial court vacated this order on Hartford's petition. The trial court also entered an order that the subrogation provisions of the insurance contract between plaintiff and Hartford were in full force and effect and that Hartford had a valid lien for the full amount of the benefits paid to the plaintiff. Plaintiff's request for a credit against the lien of the subrogee (Hartford) of $716.38 for one-third of the attorney's fees and a proportionate share of litigation expenses incurred by plaintiff in obtaining Hartford's portion of the settlement was denied by the trial court. From the gross settlement amount of $7,750,

plaintiff paid one-third to his attorneys for attorneys' fees and reimbursed his attorneys $1,237.20 for expenses incurred in maintaining the litigation. The trial court ordered plaintiff to pay Hartford's claim for subrogated medical expenses of $345 and income continuation payments of $1,804.16, for a total of $2,149,16 arising out of the insurance contract subrogation provisions.

The sole issue presented for review is whether the trial court erred in denying plaintiff's request for a credit against the lien of an intervening party for the intervenor's proportionate share of attorneys' fees and litigation expenses incurred by the plaintiff in maintaining his personal injury action.

The plaintiff contends that *Baier v. State Farm Insurance Co.* (1977), 66 Ill. 2d 119, 361 N.E.2d 1100, a recent Illinois Supreme Court decision, is dispositive of this issue.

In *Baier,* the supreme court held that a plaintiff's attorney, who negotiated a settlement which included a direct payment to the subrogee, is entitled to recover reasonable compensation from the subrogee "in proportion to the benefit received by the subrogee." (*Baier,* 66 Ill. 2d 119, 124.) The supreme court found that "[t]his theory of recovery by an attorney, known as the 'fund doctrine,' is based on the equitable concept that an attorney who performs services in creating a fund should in equity and good conscience be allowed compensation out of the whole fund from all those who seek to benefit from it." *Baier,* 66 Ill. 2d 119, 124.

We note first that the *Baier* case is not directly on point to our factual situation. The equitable considerations expressed therein are, however, equally applicable here.

In *Baier,* the court's decision was based on the "fund doctrine," where an attorney may recover for his services in the creation of a fund from all those who benefit from the fund. In our case, it is the plaintiff who has brought the action to recover the subrogee's proportionate share of attorneys' fees and expenses which plaintiff paid in full to his attorney for the creation of the fund and from which the subrogee received its subrogated share. Thus, plaintiff cannot assert the "fund doctrine" because his attorney has already been compensated in full for his services out of the whole fund. In addition, plaintiff is unable to rely upon the "fund doctrine" because its application in Illinois has been confined *only* to attorneys and not plaintiffs who have not been fully compensated for their services and expenses in creating the fund. *Baier,* 66 Ill. 2d 119, 124.

This limited interpretation of the "fund doctrine" does not preclude this court from applying the same equitable considerations contained therein to eliminate inequitable constraints upon the rights of the plaintiff. In our opinion, it promotes legal nepotism to allow recovery for the attorney from the subrogee when he has not been paid in full for his legal services

in the creation of the fund and yet deny recovery based on the same equitable approach to his client who *has paid* his attorney in full out of the proceeds of the whole fund and has not been reimbursed by the subrogee for its proportionate share of legal fees and expenses in the creation of the fund. Such a legal result, in our opinion, flies in the face of equity.

A review of decisions in other jurisdictions shows that our equitable approach to the allocation of attorneys' fees and expenses among parties, one of whom does not participate in the creation of the fund but benefits thereby, is well accepted.

The Nebraska Supreme Court stated it thusly in *United Services Automobile Association v. Hills* (1961), 172 Neb. 128, 133, 109 N.W.2d 174, 177:

> "[t]he applicable rule is that where the holder of the subrogation right does not come into the action, whether he refuses to do so or acquiesces in the plaintiff's action, but accepts the avails of the litigation, he should be subjected to his proportionate share of the expenses thereof, including attorney's fees."

The court further determined that its decision was based on the equitable theory that one who incurs expenses for the recovery of money for the benefit of an equitable subrogation right holder should be allowed reimbursement for a proportionate share of the expense which was for the benefit of the holder of the subrogation right.

In a New York case, *Herbert Rosenthal Jewelry Corp. v. St. Paul Fire & Marine Insurance Co.* (1966), 17 N.Y.2d 857, 218 N.E.2d 327, the court allowed the allocation of attorneys' fees and litigation expenses between the insurer, who had brought the action, and the insured, who had recovered an additional sum due to the insurer's efforts in creating the fund. Thus, the amount of the insured's recovery was reduced because it had not participated in the creation of the fund by the insurer.

In a Tennessee case, *Tennessee Farmers Mutual Insurance Co. v. Pritchett* (1964), 54 Tenn. App. 410, 391 S.W.2d 671, the court found that the insurer, who had notice that its insured would proceed with a suit for damages in an automobile collision case and did nothing to protect its interests, could not recover the amount which it had paid the insured for his damages without paying its proportionate share for the services of the attorney who obtained the settlement for the insured.

In a Texas case, *State Farm Mutual Automobile Insurance Co. v. Elkins* (Tex. Civ. App. 1970), 451 S.W.2d 528, the court held that the pro rata costs and expenses incurred by the insured in obtaining recovery from a tort-feasor were to be borne by the insurer who shared in the insured's recovery.

The Supreme Court of Delaware in *Phillips v. Liberty Mutual Insurance Co.* (Del. 1969), 253 A.2d 502, found that the insurer, who was

entitled to be reimbursed for insurance money it had paid to the insureds, was liable for its share of legal fees and expenses incurred by the insureds in obtaining judgment against the gas suppliers.

The Supreme Court of Wisconsin in *State Farm Mutual Automobile Insurance Co. v. Geline* (1970), 48 Wis. 2d 290, 179 N.W.2d 815, held that an attorney was entitled to reasonable compensation for services rendered in the creation of the fund from all those who benefit from the fund if the subrogee has notice of the action and elects not to participate as a party with its own legal counsel.

In an Arkansas case, *Washington Fire & Marine Insurance Co. v. Hammett* (1964), 237 Ark. 954, 956, 377 S.W.2d 811, 813, the court, in considering a similar factual situation, stated that:

> "* * * when the insurance company has benefited from the work done by the insured's attorney there is no inequity in requiring it to bear its fair share of the collection expense."

In addition, Illinois has also allowed recovery to an individual such as plaintiff in *Vignali v. Farmers Equitable Insurance Co.* (1966), 71 Ill. App. 2d 114, 216 N.E.2d 827. In *Vignali*, the court deducted from the proceeds of a subrogated insurer's dram shop settlement the attorneys' fees and expenses incurred in procuring plaintiff's suit, because "such expenses would have been paid by the insurer if it had initiated the action [and] the result should have been the same even if such recovery was secured by the insured." *Vignali*, 71 Ill. App. 2d 114, 123, 216 N.E.2d 827, 832.

In the instant case Hartford next argues that plaintiff's recovery of a proportionate share of attorneys' fees out of Hartford's subrogation award is a direct violation of its contract which provided that Hartford "is entitled to the *proceeds* of any settlement or judgment that may result from the exercise of any rights of recovery of the injured person* * *." (Emphasis added.) (Trust Agreement, par. 7.) Hartford will be reimbursed by the plaintiff to the extent of any "proceeds" plaintiff receives minus Hartford's proportionate share of attorneys' fees and expenses.

■■ As this court stated in *Remsen v. Midway Liquors, Inc.* (1961), 30 Ill. App. 2d 132, 148, 174 N.E.2d 7, 15, the meaning and interpretation to be placed on the term "proceeds.":

> "* * * "* * * depends on its context, depends very much on the connection in which it is employed and the subject matter to which it is applied."* * *' "

Further:

> "* * * "* * * the word 'proceeds' has many meanings and varied usages and is in many instances of doubtful meaning. The subject matter and purpose of a contract must be considered in order to determine the meaning of the word as used by the parties.

As used, the word has been variously defined, * * *; it has been held to mean gross proceeds and net proceeds." * * *' " (30 Ill. App. 2d 132, 148.)

Equitably, we feel the only interpretation of the term "proceeds" as used in this contract is that the amount the subrogee actually received would be reduced by its proportionate share of attorneys' fees and expenses. Accordingly, we find no violation of the parties' contract provisions because "proceeds" in this cause means the subrogee's *net* proceeds after a deduction of its proportionate share of attorneys' fees and expenses.

■■ Hartford also argues that equity requires this court to interpret "proceeds" to mean that the available proceeds be used first to repay any subrogation lien, with the remainder retained by the plaintiff. However, such an interpretation of "proceeds" is clearly inequitable to the plaintiff, especially when the subject matter and purpose of this contract are considered. (*Remsen v. Midway Liquors, Inc.* (1961), 30 Ill. App. 2d 132, 174 N.E.2d 7.) Therefore we reverse the order of the trial court which denied plaintiff credit against Hartford's lien for attorneys' fees and expenses incurred.

■■ Computation of the amount of credit for attorneys' fees and expenses to which plaintiff is entitled against Hartford's lien was not determined by the trial court in light of its denial of plaintiff's motion. Plaintiff asks this court to enter an order reducing Hartford's lien by $716.38 for attorneys' fees, which is one-third of Hartford's lien of $2,149.16, and to further reduce Hartford's lien by $334.04, which plaintiff asserts is Hartford's proportionate share of the $1,237.20 of litigation expenses incurred by plaintiff in this action. It is clear from this record that the total settlement was for $7,750 and that reasonable attorneys' fees on such a settlement would be one-third of this amount. Accordingly, we find that it is not paramountly unfair to require Hartford to pay attorneys' fees of $716.38 based on one-third of its share of the judgment. In addition, we find that Hartford's lien on the total settlement amounts to approximately 27 percent of the gross settlement of $7,750. Therefore, this court finds that plaintiff's request that Hartford share in the same 27 percent portion of the total litigation expenses in the amount of $334.04 is reasonable and equitable and is supported by the record.

For the reasons stated, the judgment of the circuit court of Kane County is reversed with instructions to enter an order reducing Hartford's lien of $2,149.16 by $1,050.42—to $1,098.74.

Judgment reversed and remanded with instructions.

SEIDENFELD and WOODWARD, JJ., concur.