# Illinois Official Reports

## Appellate Court

---

### *Stefanski v. City of Chicago*, 2015 IL App (1st) 132844

---

| | |
|---|---|
| Appellate Court Caption | NELLI STEFANSKI, Individually and on Behalf of All Others Similarly Situated, Plaintiff and Counterdefendant-Appellee, v. THE CITY OF CHICAGO, a Municipal Corporation, Defendant and Counterplaintiff-Appellant. |
| District & No. | First District, Sixth Division<br>Docket No. 1-13-2844 |
| Filed<br>Rehearing denied | February 27, 2015<br>March 27, 2015 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In a class action against defendant city seeking declaratory relief and damages for unjust enrichment for plaintiff and the beneficiaries of the city's medical insurance plan who had received medical services paid by the city's self-funded insurance plan for personal injuries caused by third-party tortfeasors, employed the services of an attorney to collect damages from such tortfeasors and received recoveries from such tortfeasors that were reduced due to the city's refusal to reduce its subrogation claim to account for its share of the attorney fees incurred in violation of the common fund doctrine, the named plaintiff had no right to rely on the common fund doctrine to support her claims for relief against the defendant, since she had not stated an actionable claim, class certification was improper, and the trial court's order certifying the class had to be vacated. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 09-CH-29238; the Hon. LeRoy K. Martin, Jr., Judge, presiding. |
| Judgment | Reversed and vacated. |

Counsel on Appeal     Stephen R. Patton, Corporation Counsel, of Chicago (Benna Ruth Solomon, Myriam Zreczny Kasper, and Suzanne M. Loose, Assistant Corporation Counsel, of counsel), for appellant.

Krislov & Associates, of Chicago (Clinton A. Krislov and Michael R. Karnuth, of counsel), for appellee.

Panel     JUSTICE ROCHFORD delivered the judgment of the court, with opinion.
Justice Lampkin concurred in the judgment and opinion.
Justice Hall dissented, with opinion.

**OPINION**

¶ 1     Plaintiff and counterdefendant-appellee, Nellie Stefanski, individually and on behalf of all others similarly situated, brought the instant class action lawsuit against defendant and counterplaintiff-appellant, the City of Chicago (the City), a municipal corporation. Plaintiff sought declaratory relief and damages for unjust enrichment on behalf of herself and a putative class of current and former beneficiaries of the City's medical insurance plan who had: (1) received medical services paid by the City's self-funded insurance plan for personal injuries caused by third-party tortfeasors; (2) employed the services of an attorney to collect damages from such tortfeasors; and (3) received recoveries from such tortfeasors that were reduced due to the City's improper refusal to reduce its subrogation claim to account for its share of the attorney fees incurred by plaintiff, in violation of the so-called "common fund doctrine."

¶ 2     The circuit court ultimately concluded that the common fund doctrine applied to the claims raised in this suit, certified a class of such plaintiffs, granted summary judgment in favor of that class, and denied the City's cross-motion for summary judgment. We thereafter granted the City's petition for leave to appeal from the circuit court's order granting certification of this class action lawsuit, pursuant to Illinois Supreme Court Rule 306(a)(8) (eff. Feb. 16, 2011). Because the named plaintiff cannot maintain a cause of action under the common fund doctrine, we reverse.

¶ 3                        I. BACKGROUND

¶ 4     Because we reverse the circuit court's ruling that the common fund doctrine applies to the claims of the named plaintiff, and because our conclusion on that issue is dispositive, only those facts necessary to resolve this issue will be recited.

¶ 5     On August 19, 2009, plaintiff filed the instant lawsuit against the City. Therein, plaintiff generally alleged that: (1) on or about May 17, 2007, she was employed by the City and covered by the City of Chicago Medical Care Plan (Plan) when she was injured in an automobile collision caused by a third-party tortfeasor; (2) she received medical services in

connection with this collision, which were paid for in full or in part by the Plan; (3) plaintiff retained an attorney, who obtained an $18,000 settlement from the third-party tortfeasor as compensation for plaintiff's personal injuries; (4) pursuant to her contingent-fee agreement with her attorney, plaintiff was obligated to pay her attorney one-third of that total amount for legal services; (5) the City's attorneys, without participating in the recovery of the settlement, nevertheless asserted a claim against plaintiff's recovery pursuant to subrogation and reimbursement language contained in the Plan's documentation; (6) the City ultimately claimed a $3,824 lien on plaintiff's recovery, representing the full amount the City had paid for plaintiff's medical services; (7) the City's attorney initially refused a request by plaintiff's attorney to reduce its claim by one-third–pursuant to the common fund doctrine–in order to account for the City's proportionate share of the legal fees incurred by plaintiff in obtaining the $18,000 settlement; (8) the City ultimately agreed to partially reduce its claim to $2,900, in order to settle the dispute over the common fund issue; and (9) "under protest," plaintiff's attorney arranged for $2,900 to be paid to the City by the third-party tortfeasor in May of 2009.

¶ 6    The complaint further alleged that the City's refusal to reduce its subrogation and reimbursement claim to account for its share of the plaintiff's attorney fees violated the common fund doctrine and caused plaintiff damages. Plaintiff's complaint, therefore, sought both a declaration that the City's actions had violated the common fund doctrine (count I) and recovery for the City's resulting unjust enrichment (count II). In addition, plaintiff sought to pursue this lawsuit as a class action and to serve as the class representative on behalf of a class comprised of all others similarly situated. Specifically, she sought to represent a class of: "All current or former participants in the City of Chicago Medical Care Plan against whom a purported subrogation or reimbursement lien has been asserted without a *pro rata* reduction pursuant to Illinois' common fund doctrine, during the period from May 1998 to the present." A motion for class certification was filed along with plaintiff's complaint.

¶ 7    On November 6, 2009, the City filed a combined motion to dismiss plaintiff's complaint pursuant to sections 2-615, 2-619, and 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615, 2-619, 2-619.1 (West 2008)). Therein, the City contended that the complaint should be dismissed because: (1) as a plan participant and not the attorney of such a plan participant, plaintiff was not the proper party to bring a claim under the common fund doctrine; (2) plaintiff's claims were barred by language in the Plan's documentation providing that "[t]he Plan shall not be responsible for any litigation related expenses or attorney fees incurred by or on behalf of a Covered Person in connection with an Injury Claim unless the Plan shall have specifically agreed in writing to pay such expenses or fees"; and (3) plaintiff paid the City $2,900 in response to the City's settlement offer, thus barring her claims under the voluntary payment doctrine and the doctrine of accord and satisfaction. The circuit court denied the City's motion on February 8, 2010.

¶ 8    The City thereafter filed its answer, affirmative defenses, and a counterclaim against plaintiff, in which it raised–*inter alia*–the same arguments raised in its motion to dismiss. The parties thereafter filed briefs addressing the merits of plaintiff's motion for class certification and cross-motions for summary judgment. Exhibits attached to these various filings established that plaintiff's attorney had been paid a full one-third contingent fee with respect to the total $18,000 personal injury recovery obtained on behalf of plaintiff.

¶ 9        On August 26, 2013, the circuit court entered a written order granting plaintiff's motion for class certification and certifying a class comprised of: "All current and former participants in the City of Chicago Medical Care Plan who retained counsel and who have obtained a recovery against which a subrogation or reimbursement lien has been asserted without a *pro rata* reduction pursuant to Illinois' common fund doctrine, during the period from August 19, 1999 to the present." In that order, the circuit court also granted summary judgment in favor of plaintiff and the class on counts I and II of the complaint, and denied the City's motion for summary judgment.

¶ 10       The City thereafter filed a petition for leave to appeal from the circuit court's order granting certification of this class action lawsuit, pursuant to Illinois Supreme Court Rule 306(a)(8) (eff. Feb. 16, 2011). We granted that petition on January 13, 2014.

¶ 11       II. ANALYSIS

¶ 12       On appeal, the City raises a host of challenges to the circuit court's order granting plaintiff's motion for class certification. These include the City's assertions that: (1) plaintiff was not the proper party to bring a claim under the common fund doctrine; (2) plaintiff's individual claims were barred under the voluntary payment doctrine and the doctrine of accord and satisfaction; (3) the statutory prerequisites for maintaining a class action were not met in this case; and (4) the circuit court improperly relied upon a 10-year–rather than a 5-year–statute of limitations in defining the scope of the certified class. As noted above, we find the City's initial argument to be dispositive.

¶ 13       A. Legal Framework and Standard of Review

¶ 14       Class certification is governed by section 2-801 of the Code. 735 ILCS 5/2-801 (West 2012). That section generally provides that "an action may proceed as a class action only if the circuit court finds: (1) the class is so numerous that joinder of all members is impractical; (2) there are questions of fact or law common to the class, and those common questions predominate over any questions affecting only individual members; (3) the representative parties will fairly and adequately protect the interest of the class; and (4) the class action is an appropriate method for the fair and efficient adjudication of the controversy. Decisions regarding class certification are within the discretion of the trial court and will not be disturbed on appeal unless the trial court abused its discretion or applied impermissible legal criteria." *Smith v. Illinois Central R.R. Co.*, 223 Ill. 2d 441, 447 (2006); 735 ILCS 5/2-801 (West 2012).

¶ 15       "However, there is no need to determine whether these prerequisites are met if, as a threshold matter, the record establishes that the plaintiff has not stated an actionable claim." *Uesco Industries, Inc. v. Poolman of Wisconsin, Inc.*, 2013 IL App (1st) 112566, ¶ 47. Put in terms of the above framework, "[c]lass certification is not proper when the putative class representative cannot adequately represent the class sought to be certified," and "[a] representative cannot adequately represent a class when the representative does not state a valid cause of action." *De Bouse v. Bayer AG*, 235 Ill. 2d 544, 560 (2009). Where it is determined on appeal that the named plaintiff in a class action lawsuit is not an appropriate representative of the putative class, the order of the circuit court certifying the class must be vacated. *Id.* See also *Griffith v. Wilmette Harbor Ass'n*, 378 Ill. App. 3d 173, 184 (2007) ("In the context of a class action, if a purported representative plaintiff for a class action cannot

maintain his individual claim against the defendant because of lack of standing or otherwise, then the class action claim cannot be maintained.").

¶ 16                                          B. Discussion

¶ 17        The common fund doctrine provides the basis for both plaintiff's own claim and the claims of the putative class members. However, we reject plaintiff's reliance upon the common fund doctrine because–as explained below–it is an equitable, quasi-contractual right to attorney fees recognized when there is otherwise no relevant, express contract in place. In contrast, here the express language contained in the Plan documentation provides that the City was not to be responsible for any attorney fees incurred by or on behalf of plaintiff with respect to her lawsuit.

¶ 18        As our supreme court has summarized:

> "The common fund doctrine is an exception to the general American rule that, absent a statutory provision or an agreement between the parties, each party to litigation bears its own attorney fees and may not recover those fees from an adversary. [Citation.] The doctrine provides that ' "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." ' [Citation.] Underlying the doctrine is the equitable concept that the beneficiaries of a fund will be unjustly enriched by the attorney's services unless they contribute to the costs of the litigation. [Citations.] Courts have applied the common fund doctrine in numerous types of civil litigation, including insurance subrogation claims, class actions, and wrongful-death cases involving an intervenor. [Citations.]" *Wendling v. Southern Illinois Hospital Services*, 242 Ill. 2d 261, 265 (2011).

Plaintiff contends this doctrine supports her claims, as it was only through her efforts that the City was reimbursed for the payments it made on her behalf, and the City, therefore, had an obligation under the common fund doctrine to pay for its proportionate share of the attorney fees incurred in realizing that reimbursement.

¶ 19        However, our supreme court has made it clear that the common fund doctrine is a "quasi-contractual right to payment of fees for services" that rests upon "equitable considerations of *quantum meruit* and the prevention of unjust enrichment." *Scholtens v. Schneider*, 173 Ill. 2d 375, 390 (1996). A "contract implied in law, or a quasi-contract, is one in which no actual agreement exists between the parties but a duty is imposed to prevent unjustness." *C. Szabo Contracting, Inc. v. Lorig Constuction Co.*, 2014 IL App (2d) 131328, ¶ 24. For that reason, a remedy based on a quasi-contract "is not available when an express contract exists concerning the same subject matter." *Id.* ¶ 25. Here there is an express contractual agreement between plaintiff and the City that governs their rights and obligations. Indeed, it is pursuant to that express agreement that plaintiff's medical bills were paid and the City was, therefore, entitled to assert a subrogation claim on plaintiff's recovery in the first instance.

¶ 20        The Plan's documentation provides that if it provided benefits on plaintiff's behalf for personal injuries, it was subrogated to "all present and future rights of recovery" that plaintiff might have arising out of her personal injuries. The Plan was entitled to assert a subrogation lien to protect that right and was entitled to full reimbursement for any benefits it paid on

plaintiff's behalf. The Plan documentation further provided that "[t]he Plan shall not be responsible for any litigation related expenses or attorney fees incurred by or on behalf of a Covered Person in connection with an Injury Claim unless the Plan shall have specifically agreed in writing to pay such expenses or fees."

¶ 21    In light of this contractual language, we conclude that plaintiff is not entitled to rely upon the common fund doctrine to support her claims. Again, that doctrine is an equitable, quasi-contractual right, and such rights are applicable when there is no express contract in place. Here, the Plan documentation provides that the City was not to be responsible for the payment of any attorney fees incurred by or on behalf of plaintiff with respect to her lawsuit, and it would be contrary to the equitable underpinnings of the common fund doctrine to apply it to such a situation. See *Industrial Lift Truck Service Corp. v. Mitsubishi International Corp.*, 104 Ill. App. 3d 357, 362 (1982) ("Plaintiff's attempt here to bring a quasi-contract action is nothing more than an attempt to unilaterally amend the agreement in a manner prohibited by the agreement. In such circumstances, the benefit received by defendant can hardly be considered unjust.").

¶ 22    Despite this conclusion, we note that the parties have argued extensively regarding the implications of a trio of decisions from our supreme court. See *Baier v. State Farm Insurance Co.*, 66 Ill. 2d 119 (1977); *Scholtens*, 173 Ill. 2d 375; *Bishop v. Burgard*, 198 Ill. 2d 495 (2002).

¶ 23    In *Baier*, our supreme court considered the legal basis for a putative class action. *Baier*, 66 Ill. 2d at 122. The named plaintiff was an attorney who sought to recover a fee for his services from his client's insurer, where the attorney had obtained a $12,000 settlement from a tortfeasor that had caused personal injuries to his client. *Id.* Of that amount, $1,000 was paid to the insurer in full satisfaction of the insurer's subrogation claim to recover for medical expenses it had paid on the client's behalf. *Id.* at 122-23. The attorney was paid a fee of only one-third of the plaintiff's net $11,000 recovery, and the suit was brought on behalf of the attorney and all other attorneys similarly situated to recover for their services in creating a common fund benefiting the insurer. *Id.*

¶ 24    Our supreme court recognized the attorney's right to rely upon the common fund doctrine in this factual context, after noting a number of other jurisdictions had come to a similar conclusion and recognizing the "equitable concept that *an attorney* who performs services in creating a fund should in equity and good conscience be allowed compensation out of the whole fund from all those who seek to benefit from it." (Emphasis added.) *Id.* at 124. In so ruling, our supreme court rejected the insurer's argument that the application of the common fund doctrine would violate its subrogation agreement with the client, one that required the insurer to be reimbursed in full. *Id.* at 126. Reasoning that the client had already fully reimbursed the insurer for the medical expenses it had paid on the client's behalf, our supreme court noted that "[a]ny recovery by [the attorney] from [the insurer] would not violate the contract between [the insured] and [the insurer]." *Id.*

¶ 25    In *Scholtens*, the plaintiff was an electrician covered by a union insurance plan when he was injured in an automobile collision caused by third-party tortfeasors. *Scholtens*, 173 Ill. 2d 377. The trustee administrators of plaintiff's insurance plan paid over $40,000 in medical bills and disability benefits on behalf of the plaintiff, and the trustees thereafter claimed a subrogation lien for the full amount of those payments pursuant to subrogation clauses contained in the plan's documentation and a separate agreement signed by the plaintiff. *Id.*

When the plaintiff obtained a $100,000 settlement of the plaintiff's personal injury lawsuit, the plaintiff's attorney filed a petition to adjudicate the trustees' lien in that suit, contending that it should be reduced in light of the common fund doctrine. *Id.* at 377-78. The circuit court agreed and reduced the trustees' lien. *Id.* at 379. The question our supreme court addressed was whether application of the common fund doctrine in that case was preempted by the Employee Retirement Income Security Act of 1974 (ERISA) (29 U.S.C. § 1144 (1982)), which governed the plaintiff's insurance plan. Our supreme court concluded that it was not. *Scholtens*, 173 Ill. 2d at 377-79.

¶ 26    In reaching that conclusion, the court noted that the plaintiff "specifically acknowledges the Trustees' right to subrogation under both the benefit plan and the subrogation agreement. He does not seek to modify or avoid his obligation to reimburse the plan for benefits paid to him and does not question the right of the Trustees to collect under the subrogation clause." *Id.* at 389. Rather, our supreme court reasoned:

> "The claim for attorney fees at issue here did not arise out of that contractual agreement or any separate subrogation agreement executed between the Trustees and [the plaintiff]. Rather, the claim for attorney fees arises independently of both the benefit plan and the subrogation agreement. Here, the attorney who represented [the plaintiff] in his tort action, and who negotiated the settlement and obtained the proceeds from which the plan's subrogation lien will be paid, simply invoked his quasi-contractual right to payment of fees for services rendered in recovering the plan's subrogation lien. The quasi-contractual obligation he seeks to impose upon the Trustees arises independently of the benefit plan, resting instead upon equitable considerations of *quantum meruit* and the prevention of unjust enrichment. Accordingly, applying the common fund doctrine under the circumstances of this case does not alter the relationship or agreements formulated among the principal ERISA entities (*e.g.*, the employer, the plan fiduciaries, and the participants). It affects the relations between one of those entities (*i.e.*, the Trustees) and an outside party. In effect, the attorney who performed legal services that ultimately led to the recovery of the plan's subrogation lien instituted a separate and distinct action against the Trustees for unpaid fees. The action, in substance if not in form, is wholly independent of and unrelated to the underlying benefit plan." *Id.* at 390.

¶ 27    As such, our supreme court concluded that the plaintiff's attorney could rely on the common fund doctrine with regard to the trustee's subrogation claim, noting that "[w]here an attorney performs legal services on the plan's behalf, however, the plan has a legal obligation to pay that attorney a reasonable fee for those services. It may not simply accept the fruits of an attorney's labor without paying a reasonable fee for the legal services rendered." *Id.* at 395. Our supreme court stressed again, however, that "the quasi-contractual obligation to pay fees in this case arises wholly independently of, and is unrelated to, both the subrogation clause in the ERISA plan and the contractual subrogation agreement that [the plaintiff] signed after the accident. The common fund doctrine is invoked by someone who is not a party to the contractual agreement between the plan and its beneficiaries to recover an unpaid debt, namely, a reasonable fee in *quantum meruit* for legal services rendered to the plan and its Trustees." *Id.* at 391.

¶ 28    In *Bishop*, our supreme court again addressed the relationship between ERISA, the common fund doctrine, a subrogation lien claimed by an insurer against a plaintiff's personal

- 7 -

injury settlement, and a petition to adjudicate that lien filed by plaintiff's attorney. *Bishop*, 198 Ill. 2d at 496. Indeed, the only significant factual difference between *Scholtens* and *Bishop* was that the agreement between the insurer and the plaintiff in *Bishop* specifically indicated that the insurer would not be responsible for the plaintiff's attorney fees. *Id.* at 502-03.

¶ 29    Nevertheless, our supreme court again concluded that ERISA did not preempt the application of the common fund doctrine to the petition to adjudicate the insurer's lien filed by the plaintiff's attorney. *Id.* at 503-04. The court specifically affirmed its prior reasoning in *Scholtens*, reiterating that "the quasi-contractual right to payment of fees for services rendered belongs to the attorney who rendered the services and does not affect the contractual relationship between the plan participant and the plan." *Id.* at 504. As such, the court concluded that the provisions regarding the plaintiff's responsibility for her own attorney fees "cannot govern the relationship between the plan and an independent entity, the attorney whose efforts created the common fund." *Id.* at 502-03.

¶ 30    In so ruling, our supreme court reiterated that, in subrogation situations such as those presented in *Scholtens* and *Bishop,* "a claim under the common fund doctrine is an *independent action*, based upon the *attorney's rights*." (Emphases in original.) *Id.* at 506. The court further noted that "[f]ollowing *Scholtens*, the appellate court has repeatedly concluded that an action to recover fees under the common fund doctrine is an independent action invoking the attorney's right to the payment of fees for services rendered." *Id.* at 504-05 (citing *Hillenbrand v. Meyer Medical Group, S.C.*, 308 Ill. App. 3d 381, 389 (1999), *Health Cost Controls v. Sevilla*, 307 Ill. App. 3d 582, 590 (1999), and *LeFevre, Zeman, Oldfield & Schwarm Law Group, Ltd. v. Wal-Mart Stores, Inc.*, 302 Ill. App. 3d 1059, 1068 (1999)).

¶ 31    We find it evident that plaintiff cannot rely upon these decisions to support application of the common fund doctrine to her own claims in this case. As an initial matter, we note that plaintiff repeatedly stressed at oral argument that our supreme court recognized the right of both a litigant and a lawyer to assert a claim under the common fund doctrine. See *Scholtens*, 173 Ill. 2d at 385 (recognizing that both " 'a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole' " (quoting *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980))). We have no quibble with this as a general proposition of law, and indeed, the above-quoted language appears in the context of a general, prefatory discussion about the "nature of that doctrine." *Scholtens*, 173 Ill. 2d at 384. But the fact that the "common fund doctrine is a common law rule of general application" (*id.* at 385) does not mean that it is properly applicable in every instance by either a litigant or a lawyer. Nor do the above decisions support plaintiff's attempt to apply the doctrine to her own claims in this specific instance, where there is an express contractual agreement between plaintiff and the City that governs their rights and obligations.

¶ 32    Indeed, none of these decisions involved the situation presented here, *i.e.*, an insured attempting to recover directly from her insurer in a separate lawsuit asserting a violation of the common fund doctrine in the context of a contractual subrogation claim. As such, in none of these cases did our supreme court recognize a *litigant's* individual right to claim application of the common fund doctrine to reduce a contractual subrogation lien claimed by that litigant's insurer. Rather, our supreme court recognized the right of such a litigant's *attorney* to rely upon the common fund doctrine in the context of such subrogation claims,

and only when the exercise of such a right could accurately be described as an independent action by and on behalf of such an attorney.

¶ 33    Thus, in *Baier*, our supreme court recognized the right of an insured litigant's *attorney* to rely upon the common fund doctrine in a class action brought on behalf of other such attorneys, but only after recognizing the "equitable concept that *an attorney* who performs services in creating a fund should in equity and good conscience be allowed compensation out of the whole fund from all those who seek to benefit from it." (Emphasis added.) *Baier*, 66 Ill. 2d at 124. In *Scholtens*, while our supreme court concluded that the common fund doctrine could be applied to reduce an insurer's subrogation claim against a recovery obtained in a suit brought on behalf of an insured plaintiff, it did so only after recognizing that "[i]n effect, the attorney who performed legal services that ultimately led to the recovery of the plan's subrogation lien instituted a separate and distinct action against the [insurer] for unpaid fees. The action, in substance if not in form, is wholly independent of and unrelated to the underlying benefit plan." *Scholtens*, 173 Ill. 2d at 390. More specifically, the court concluded that in such circumstances "[t]he common fund doctrine is invoked by someone who is not a party to the contractual agreement between the plan and its beneficiaries to recover an unpaid debt, namely, a reasonable fee in *quantum meruit* for legal services rendered." *Id.* at 391. And in *Bishop*, our supreme court again concluded that the application of the common fund doctrine under such circumstances was permissible–even in the face of contractual language indicating that the insurer would not be responsible for the plaintiff's attorney fees–only after it reiterated that, in subrogation situations such as those presented in *Scholtens* and *Bishop*, "a claim under the common fund doctrine is an *independent action*, based upon the *attorney's rights*." (Emphases in original.) *Bishop*, 198 Ill. 2d at 506.

¶ 34    Again, here plaintiff attempts to assert her own right *as a litigant* and plan participant to rely upon the common fund doctrine to reduce the City's contractual subrogation claim against the recovery her attorney obtained in her personal injury lawsuit. We find nothing in the above-discussed authority that supports her effort to do so, where that authority so clearly recognized only the right of an insured litigant's *attorney*–one not a party to the contract between the insurer and its insured–to rely on the common fund doctrine in such circumstances.

¶ 35    In fact, the above decisions recognizing an attorney's independent right to apply the common fund doctrine in the context of subrogation claims–described as being "in substance if not in form" an independent action–each relied in significant part on the fact that application of the doctrine would not alter the underlying contractual rights and obligations of the insurer and the insured. *Baier*, 66 Ill. 2d at 126 (recognizing that any recovery by attorney from insurer "would not violate the contract" between insured and insurer); *Scholtens*, 173 Ill. 2d at 390 ("applying the common fund doctrine under the circumstances of this case does not alter the relationship or agreements formulated among the principal ERISA entities (*e.g.*, the employer, the plan fiduciaries, and the participants)"); *Bishop*, 198 Ill. 2d at 504 (allowing plaintiff's attorney to independently rely upon the common fund doctrine "does not affect the contractual relationship between the plan participant and the plan"). The reason for this is clear in light of the above discussion regarding the inapplicability of equitable, quasi-contractual claims in the face of express contractual agreements governing the relationship of adverse parties.

¶ 36    Moreover, even if we overlooked this reason why plaintiff's contractual agreement with the City precludes her from relying on the "quasi-contractual right" embodied in the common fund doctrine, there is yet another obstacle. "The prevention of unjustness is the fundamental aspect of the doctrine of quasi-contracts." *Hayes Mechanical, Inc. v. First Industrial, L.P.*, 351 Ill. App. 3d 1, 8 (2004). Therefore, "even when a person has received a benefit from another, he is liable for payment ' "only if the circumstances of its receipt or retention are such that, as between the two persons, it is unjust for him to retain it. The mere fact that a person benefits another is not of itself sufficient to require the other to make restitution therefor." ' [Citation.]" *Id.* at 9.

¶ 37    We, therefore, reject plaintiff's contention that it would be "unjust" for the City to retain the "benefit" it received due to plaintiff's recovery from the third-party tortfeasor–*i.e.*, complete recovery of its subrogation claim without contributing to plaintiff's attorney fees–where the explicit contractual agreement between plaintiff and the City called for just such a result. Rather, the "justness" of this result was succinctly explained in *Administrative Committee of the Wal-Mart Stores, Inc. Associates' Health & Welfare Plan v. Varco*, 338 F.3d 680, 692 (7th Cir. 2003), where the court reasoned:

> "[M]ost covered persons–if given an option–would readily give up a 'common fund-type' reduction in exchange for having their medical expenses paid up-front in third-party liability situations instead of refusing the benefits (and therefore not having to reimburse the plan) and paying their medical expenses out of their settlement. *** In this case, plan participants have traded the possibility of having the Plan participate in attorney's fees for the guarantee that medical bills will be paid immediately."

That very trade-off has occurred in this case as well, precluding plaintiff from relying upon the common fund doctrine to recover for any purported unjust enrichment on the part of the City. See also *US Airways, Inc. v. McCutchen*, 569 U.S. ___, ___, 133 S. Ct. 1537, 1548 (2013) (recognizing that under federal common law, "if a contract abrogates the common-fund doctrine, the insurer is not unjustly enriched by claiming the benefit of its bargain").

¶ 38    Nor are we persuaded that two cases cited by plaintiff mandate a different conclusion. Plaintiff first cites to *Health Cost Controls v. Sevilla*, 365 Ill. App. 3d 795 (2006), as an instance where this court recognized *an insured's* right to rely upon the common fund doctrine with respect to a putative class action seeking to recover for an insurer's repeated refusal to reduce its subrogation claims in conformity with the doctrine. *Id.* at 797. However, in that case the court did not specifically rule that such a class of such plaintiffs would necessarily be proper. Rather, the appellate court merely found: (1) that such a class "may be allowable"; (2) the circuit court had improperly denied certification of such a class, not on the merits after an exercise of the court's discretion, but arbitrarily and so as to expedite the appeals process and accommodate the circuit court judge's retirement; and (3) the matter should, therefore, be remanded for a proper determination of whether certification of such a class would in fact be proper. *Id.* at 809-11.

¶ 39    In reaching this conclusion, the court appears to have assumed–without any detailed analysis–that the common fund doctrine would apply to the independent claims of a class of insured litigants as opposed to a class of such insured litigant's attorneys. In light of the unique factual circumstances presented in *Sevilla*, the limited nature of both the analysis of

the common fund doctrine and the final holding in that case, and our own extensive discussion above, we reject plaintiff's contention that *Sevilla* provides any significant support for the propriety of her common-fund-based claims against the City.

¶ 40    Second, plaintiff cites to *Smith v. Marzolf*, 81 Ill. App. 3d 59 (1980), as another instance where an insured litigant was permitted to rely upon the common fund doctrine in seeking to recover for his insurer's refusal to reduce its subrogation claim on the insured litigant's personal injury recovery. *Id.* at 61. However, the court in *Marzolf* did no such thing.

¶ 41    First, the issue in that case was once again not the one presented here, *i.e.*, an independent action brought on behalf of an insured to address past wrongdoing on the part of an insurer. Rather, it involved the propriety of a petition to adjudicate and reduce an insurer's subrogation lien in light of the common fund doctrine, brought in the context of the insured litigant's personal injury action itself. *Id.*

¶ 42    Moreover, the court in *Marzolf* did not rely upon the common fund doctrine in granting the requested relief. The court specifically recognized such an insured litigant " 'is unable to rely upon the "fund doctrine" because its application in Illinois has been confined only to attorneys and not plaintiffs who have not been fully compensated for their services and expenses in creating the fund.' " (Emphasis omitted.) *Id.* at 64 (quoting *Lemmer v. Karp*, 56 Ill. App. 3d 190, 192 (1977)). Nevertheless, the court went on to conclude that the plaintiff was entitled to be reimbursed for his insurer's proportionate share of attorney fees under a separate theory of "equitable apportionment," after noting that " '[t]his limited interpretation of the "fund doctrine" does not preclude this court from applying the same equitable considerations contained therein to eliminate inequitable constraints upon the rights of the plaintiff.' " *Id.* (quoting *Lemmer*, 56 Ill. App. 3d at 192).

¶ 43    We fail to see how the *Marzolf* decision supports plaintiff's efforts to apply the common fund doctrine here, where that case involved a different factual situation and so clearly indicated the common fund doctrine was not even applied in that case. Indeed, we find this decision to be of little value to plaintiff for a number of other reasons, including: (1) it was decided prior to the decisions in *Scholtens* and *Bishop*; which clearly determined that a claim under the common fund doctrine in such a subrogation situation is effectively an independent action based upon an *attorney's* rights; and (2) in assessing the equities of that situation, the court in *Marzolf* was apparently not faced–as we are here–with contractual language providing that the insurer would not be responsible for its insured's attorney fees.

¶ 44    Moreover, we are unaware of any other decision applying the separate "equitable apportionment" concept expressed therein under these circumstances. Even more importantly, plaintiff never asked the circuit court or this court to do so. In the circuit court, plaintiff's own claims specifically sought only to apply the common fund doctrine itself. And the class certified by the circuit court specifically sought only to recover for the City's failure to reduce its subrogation liens "pursuant to Illinois' common fund doctrine." It is that certified class, and not one certified to seek recovery under a theory of "equitable apportionment," that we review here. *Cruz v. Unilock Chicago, Inc.*, 383 Ill. App. 3d 752, 761 (2008) (recognizing that the scope of appellate review of class certification decisions is limited to an assessment of the trial court's exercise of discretion, and that "the appellate court cannot indulge in an independent, *de novo* evaluation of the facts alleged and the facts of record to justify class certification"). And on appeal, plaintiff merely contends that

*Marzolf* supports application of the common fund doctrine itself to the claims of an insured litigation, which it clearly does not.

¶ 45 Finally, we reject plaintiff's contention that "even assuming that it was the attorneys' claim to begin with, the client who has already paid his counsel steps in the shoes of and takes over that counsel's priority common fund claim, ahead of the plan's asserted reimbursement lien." Plaintiff cites only to *Marzolf* as support for this novel and otherwise unsupported contention. However, *Marzolf* never addressed this issue, and we, therefore, reject plaintiff's reliance upon that decision to support this argument.

¶ 46 More fundamentally, we reject plaintiff's contention that, by paying her attorney's full one-third fee, she has essentially been assigned her attorney's common fund claim against the City. A claim under the common fund doctrine is not a claim at law, but one in equity. For all the reasons expressed above, we conclude that equity does not support plaintiff's attempt to recover under that doctrine.

¶ 47 Indeed, this argument presumes–and the record clearly reflects–that plaintiff's attorney was in fact paid a full one-third fee on the total $18,000 recovery plaintiff obtained from the tortfeasor. As we have noted above, the common fund doctrine is a "quasi-contractual right" that rests upon "equitable considerations of *quantum meruit* and the prevention of unjust enrichment." *Scholtens*, 173 Ill. 2d at 390; see also *Weydert Homes, Inc. v. Kammes*, 395 Ill. App. 3d 512, 522 (2009) ("*Quantum meruit* is used as an equitable remedy to provide restitution for unjust enrichment ***."). "To state a claim for unjust enrichment, 'a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience.' [Citation.]" *Gagnon v. Schickel*, 2012 IL App (1st) 120645, ¶ 25. While it is perhaps arguable that–*vis-à-vis* plaintiff's attorney–the City has unjustly retained the benefit of his labor, it cannot be argued that this benefit was retained to the detriment of plaintiff's attorney where the attorney has already been fully compensated. See also *Scholtens*, 173 Ill. 2d at 391 (recognizing that the common fund doctrine is invoked "to recover an *unpaid* debt" (emphasis added)). As such, here there is simply no valid common fund claim for plaintiff to take over from her attorney.

¶ 48 In sum, we conclude that the named plaintiff in this action has no right to rely upon the common fund doctrine to support her claims for declaratory relief and unjust enrichment against the City. As such, she has not stated an actionable claim, class certification was improper, and the order of the circuit court certifying the class in this case must be vacated. *Uesco Industries, Inc.*, 2013 IL App (1st) 112566, ¶ 47; *De Bouse*, 235 Ill. 2d at 560.

¶ 49                                              III. CONCLUSION

¶ 50 For the foregoing reasons, we reverse and vacate the judgment of the circuit court granting plaintiff's motion for class certification.

¶ 51 Reversed and vacated.

¶ 52 JUSTICE HALL, dissenting.

¶ 53 I respectfully dissent. Contrary to the majority's holding, I believe the circuit court properly ruled in favor of the plaintiff. The majority argues that the following language

contained in the City of Chicago Medical Care Plan (Plan) negates application of the common fund doctrine: "The Plan shall not be responsible for any litigation related expenses or attorney fees incurred by or on behalf of a Covered Person in connection with an Injury Claim unless the Plan shall have specifically agreed in writing to pay such expenses or fees." The majority contends that application of the common fund doctrine would contradict the terms of the above-quoted language. I disagree.

¶ 54 "The common-fund doctrine long predates *** employer-sponsored health plans. Most applications have nothing to do with health insurance in general, or employer-sponsored plans in particular." *Blackburn v. Sundstrand Corp.*, 115 F.3d 493, 495 (7th Cir. 1997). "The obligation to pay fees under the common fund doctrine, which is quasi-contractual, is independent of any insurance contract or subrogation agreement and is 'resting instead upon equitable considerations of *quantum meruit* and the prevention of unjust enrichment.' " *Wajnberg v. Wunglueck*, 2011 IL App (2d) 110190, ¶ 26 (quoting *Scholtens v. Schneider*, 173 Ill. 2d 375, 390 (1996)); see also *Baier v. State Farm Insurance Co.*, 66 Ill. 2d 119, 122-26 (1977) (rejecting subrogee-insurer's argument that application of the common fund doctrine would violate the subrogation contract between itself and the insured).

¶ 55 The majority suggests that since the common fund doctrine is a remedy based on a quasi-contract, this remedy "is not available when an express contract exists concerning the same subject matter." *C. Szabo Contracting, Inc. v. Lorig Construction Co.*, 2014 IL App (2d) 131328, ¶ 25. The majority's reliance on *C. Szabo Contracting, Inc.* is misguided because that case involved a sub-subcontractor seeking to pursue quasi-contractual relief against a general contractor for pipe-jacking work it completed. In *C. Szabo Contracting, Inc.*, the benefit conferred was not attributable to legal services provided, but rather to the pipe-jacking work performed by the sub-subcontractor. Moreover, the obligation to pay fees under the common fund doctrine, which is quasi-contractual, arises by operation of law rather than by an express contractual agreement. See, *e.g.*, *Fleissner v. Fitzgerald*, 403 Ill. App. 3d 355, 361 (2010) ("A quasi-contract, or contract implied in law, exists independent of any agreement or consent of the parties and is imposed in law to provide justice for the plaintiff.").

¶ 56 The majority also contends that the plaintiff cannot assert her own right, as a litigant and plan participant, to rely upon the common fund doctrine in the context of subrogation claims. Again I must disagree.

¶ 57 Our courts have determined that when a settlement fund has been created by the efforts and representation of a plaintiff's attorney and the plaintiff brings an action against its subrogee-insurer who benefitted from the representation but did not contribute to the costs of that representation, the court may apply the same equitable considerations underlying the common fund doctrine to require the insurer to share *pro rata* in the fees and costs incurred by the plaintiff in securing the settlement fund out of which the reimbursement was required. See *Lemmer v. Karp*, 56 Ill. App. 3d 190, 192-94 (1977). Plaintiff initiated and prosecuted proceedings against a third-party tortfeasor which resulted in a settlement fund out of which the City is entitled to reimbursement for medical expenses advanced under the terms of the Plan. The City benefitted from the efforts of plaintiff's attorney but did not contribute to the costs of that representation. As a result, the equitable considerations underlying the common fund doctrine entitle the plaintiff to be credited for a *pro rata* share of attorney fees she incurred in securing the settlement fund out of which the City is to be reimbursed.