Rule 23 order filed
May 26, 2015;
Motion to publish granted
July 8, 2015.

2015 IL App (5th) 130413

NO. 5-13-0413

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT
_____

| | | |
|---|---|---|
| SCHREMPF, KELLY, NAPP & DARR, LTD., | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Madison County. |
| | ) | |
| v. | ) | No. 09-MR-745 |
| | ) | |
| THE CARPENTERS' HEALTH AND WELFARE | ) | |
| TRUST FUND and THE TRUSTEES OF THE | ) | |
| CARPENTERS' HEALTH AND WELFARE TRUST | ) | |
| FUND OF ST. LOUIS, | ) | Honorable |
| | ) | Barbara L. Crowder, |
| Defendants-Appellants. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE CATES delivered the judgment of the court, with opinion.
Justices Goldenhersh and Schwarm concurred in the judgment and opinion.

**OPINION**

¶ 1　The plaintiff, Schrempf, Kelly, Napp & Darr, Ltd., was granted summary judgment by the circuit court of Madison County for attorney fees and costs it claimed were due pursuant to the Illinois common fund doctrine. The defendants, the Carpenters' Health and Welfare Trust Fund and the trustees of the Carpenters' Health and Welfare Trust Fund of St. Louis, appeal. We affirm.

¶ 2　On May 4, 2006, James Corey Miller (Miller) was injured when he fell from a ladder. Miller was a participant in the Carpenters' Health and Welfare Trust Fund of St.

1

Louis (the Plan). The Plan is a self-funded, multi-employer, employee welfare benefit plan subject to the provisions of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 *et seq.* (ERISA) and applicable regulations issued thereunder.

¶ 3    The defendants became aware that Miller's injuries were "sustained due to the act or omission of a third party when Miller applied for disability benefits because he was no longer able to work." As a part of his benefit coverage, the Plan was "not obligated to pay any benefits" for an injury or sickness where "a third party [was] legally liable to make payment or does make payment." The Plan documents contained a subrogation clause, however, which provided that when the Plan paid benefits for a covered injury, "the Plan [was] subrogated, to the extent of the benefits paid, to all rights and claims of the [employee] against any third party who may be liable." As a part of the written subrogation terms, the Plan reserved, for itself, the option to institute and prosecute a legal action in the name of the injured employee against any potentially liable third party. In the event of a recovery, the Plan was to be indemnified not only for the Plan benefits paid to the employee, but also for any attorney fees and costs incurred by the Plan to obtain the reimbursement. In the event the defendants chose not to pursue recovery, and the employee successfully, on his own, prosecuted his claim, then the Plan was entitled to immediate reimbursement for all of the Plan benefits paid to the employee. The Plan documents mandated that the rate of reimbursement was 100%, without any reduction whatsoever. Further, if the employee retained his own attorney to recover the Plan benefits, "the Plan [was] not obligated to pay or contribute to or be charged for any part

2

of any attorney fees or other expenses incurred by [the employee] to obtain [the] third-party recovery, and all such fees and expenses [were] the obligation of the [employee] alone." In other words, the Plan received 100% reimbursement for the benefits extended to the employee, without any deduction for attorney fees or costs incurred to create the fund of money used to reimburse the Plan.

¶ 4 Miller retained the law firm of Schrempf, Kelly, Napp & Darr, Ltd. (the plaintiff), to represent Miller and his wife in a personal injury action for the damages they suffered as a result of Miller's fall from the ladder. The Millers agreed to pay the plaintiff a one-third contingency fee for the legal work performed on their behalf, and also agreed to reimburse the plaintiff for any costs incurred. As a condition for payment of Plan benefits, Miller and his attorney were required by the Plan to complete and sign a "Subrogation Agreement–Right To Reimbursement" form to warrant that they would adhere to the requirements of the Plan in the event of any third-party recovery on account of Miller's injuries. The written agreement acknowledged the Plan's right to subrogation and reaffirmed Miller's obligation to reimburse the Plan up to 100% of the payments made, without any deduction, whatsoever. There were no additional terms set forth in the letter agreement not previously set forth in the Plan document. The subrogation agreement made no mention, specifically, of attorney fees or placed any obligations on the Millers' attorneys, other than acknowledgment of the terms of the subrogation agreement.

¶ 5 The plaintiff filed a lawsuit against the third party allegedly responsible for causing Miller's fall. As a result of this litigation, Miller and his wife ultimately settled

3

their claims for the lump sum amount of $500,000. Prior to the settlement, the defendants had advanced benefits under the Plan for Miller in the amount of $86,709.73. Pursuant to the terms of the Plan, Miller reimbursed the full amount of $86,709.73 to the defendants, without any deduction for attorney fees or costs. The plaintiff then made a demand on the Plan for payment of attorney fees in the amount of $28,903.25, representing one-third of the Plan benefits ($86,709.73) Miller had returned to the Plan as a result of the settlement. The plaintiff also requested costs in the amount of $3,020.09. The defendants refused payment, which led to the filing of this separate action based upon the Illinois common fund doctrine.

¶ 6 Once served with the plaintiff's complaint, the defendants filed suit in the United States District Court for the Southern District of Illinois and sought an injunction to stay the plaintiff's state court action for attorney fees and costs. The federal district court entered a temporary restraining order and made it permanent by way of an injunction pursuant to the Anti-Injunction Act (28 U.S.C. § 2283 (2006)). Consequently, the state court action was stayed. The plaintiff appealed this ruling to the Seventh Circuit, claiming that the federal court lacked jurisdiction where a state court defendant raises ERISA preemption as a basis for federal jurisdiction under the well-pleaded complaint rule. *Trustees of Carpenters' Health & Welfare Trust Fund of St. Louis v. Darr*, 694 F.3d 803, 806 (7th Cir. 2012). The plaintiff also claimed the federal court had no authority to enter an injunction under the Anti-Injunction Act (Act), 28 U.S.C. § 2283, to prohibit the plaintiff from pursuing its claim in state court under the Illinois common fund doctrine. The Seventh Circuit dispensed with the jurisdiction argument, recognizing the right of the

4

defendants to "bring claims under § 502(a)(3)(A) of ERISA to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan. 29 U.S.C. § 1132(a)(3)." (Internal quotation marks omitted.) *Trustees*, 694 F.3d at 807. Having found a basis for jurisdiction, the court next considered whether the district court had the authority, pursuant to the Act (28 U.S.C. § 2283 (2006)), to enter the injunction enjoining the state court action. To answer that question, the Seventh Circuit first looked at the Act, which states: "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283 (2006). The court then examined whether the lawsuit filed by the plaintiff in state court was expressly preempted by some mandate contained within ERISA's statutory scheme. The court questioned whether the plaintiff's state law claim, brought pursuant to the Illinois common fund doctrine, would interfere with the enforcement, administration, or other core concepts covered by ERISA's comprehensive statutory scheme. In doing so, the court acknowledged that "run-of-the-mill state court lawsuits, 'although obviously affecting and involving ERISA plans and their trustees, are not pre-empted by ERISA' when they involve unpaid rent, a failure to pay creditors, or even commonplace torts. [Citation.] [The plaintiff's] common fund suit, although certainly involving the Fund's finances, [did] not directly involve the recovery of benefits." *Trustees*, 694 F.3d at 808. The Seventh Circuit therefore concluded that ERISA did not preempt the plaintiff's lawsuit because the common fund doctrine claim was merely tangential to those core federal interests preempted by ERISA. Thus, the state law claim

5

was not a sufficient basis for an injunction "simply because the state law claim [might] trigger a liability the plan intended to place on beneficiaries." *Trustees*, 694 F.3d at 810. The Seventh Circuit therefore vacated the district court's injunction, allowing this litigation to proceed.

¶ 7     The defendants continued their refusal to pay the plaintiff's attorney fees and costs. In their answer to the plaintiff's first amended complaint, the defendants again claimed, among other defenses, that ERISA preempted the plaintiff's state law claim pursuant to the Illinois common fund doctrine.    The plaintiff subsequently filed a motion for summary judgment pursuant to section 2-1005 of the Code of Civil Procedure (735 ILCS 5/2-1005 (West 2012)) against the defendants.    The trial court allowed the parties the opportunity to fully brief the issues, held a formal hearing on the motion, and granted the plaintiff's motion for summary judgment.    In its order, the court found that "ERISA does not pre-empt Illinois law where, as here, those seeking to apply the common fund doctrine are not parties to the plan."    The court concluded that the common fund doctrine applied to the plaintiff's claim and entered judgment for the plaintiff in the amount of $28,903.25, plus prejudgment interest and costs.    This appeal followed.

¶ 8     The defendants argue on appeal that they should not have to pay the plaintiff any attorney fees or costs because the Illinois common fund doctrine is preempted by ERISA in the case of a self-funded employee benefit plan.

¶ 9                                    Analysis

¶ 10   We initially note that summary judgment is appropriate when the pleadings, depositions, and admissions on file, together with any affidavits, show that there is no

6

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 43, 809 N.E.2d 1248, 1256 (2004). When presented with either a grant or denial of a summary judgment motion, we apply a *de novo* standard of review. *Hernandez v. Alexian Brothers Health System*, 384 Ill. App. 3d 510, 519, 893 N.E.2d 934, 941 (2008). Under the facts presented here, the plaintiff was entitled to a judgment in its favor as a matter of law.

¶ 11   "The common fund doctrine is an exception to the general American rule that, absent a statutory provision or an agreement between the parties, each party to litigation bears its own attorney fees and may not recover those fees from an adversary. *** Underlying the doctrine is the equitable concept that the beneficiaries of a fund will be unjustly enriched by the attorney's services unless they contribute to the costs of the litigation." *Wendling v. Southern Illinois Hospital Services*, 242 Ill. 2d 261, 265, 950 N.E.2d 646, 648 (2011). Consequently, the common fund doctrine is a "quasi-contractual right to payment of fees for services" that "rest[s] *** upon equitable considerations of *quantum meruit* and the prevention of unjust enrichment." *Scholtens v. Schneider*, 173 Ill. 2d 375, 390, 671 N.E.2d 657, 665 (1996).

¶ 12   It is well settled in Illinois that an attorney's claim pursuant to the Illinois common fund doctrine is not preempted by the terms of a self-funded ERISA plan. See *Bishop v. Burgard*, 198 Ill. 2d 495, 505-07, 764 N.E.2d 24, 31-32 (2002); *Scholtens v. Schneider*, 173 Ill. 2d 375, 397, 671 N.E.2d 657, 668 (1996). An action by an attorney under the common fund doctrine is an independent action invoking the attorney's right to the payment of fees for services rendered and is wholly unrelated to the Plan itself. The

7

Plan's contractual provisions cannot govern the relationship between an independent entity, *i.e.*, the attorney whose efforts created the common fund, and the Plan itself. Therefore, it is not preempted by ERISA. See *Bishop*, 198 Ill. 2d 495, 764 N.E.2d 24; *Scholtens*, 173 Ill. 2d 375, 671 N.E.2d 657. Here, Miller was the Plan beneficiary who was bound by the contractual terms of the Plan. His lawyers were not parties to the contract and the contractual provisions did not govern the relationship between the Plan and the plaintiff, an independent entity. The fact that the Plan's terms attempted to shift the payment of attorney fees to the beneficiary had no effect on the claim by the plaintiff. There is nothing in the record that would allow us to conclude that the plaintiff agreed to forego payment of its attorney fees and costs for conferring a benefit on the Plan.

¶ 13 The facts presented here are almost identical to those considered by our supreme court in *Bishop v. Burgard*, 198 Ill. 2d 495, 764 N.E.2d 24 (2002). In *Bishop*, the employee was in an automobile accident and incurred medical expenses. She was a participant in her employer's ERISA plan, which paid her medical benefits. Bishop retained an attorney to represent her in her personal injury claim, which was ultimately settled. Bishop's attorney filed a petition to adjudicate the medical lien. The plan contained language very similar to the language here in that the responsibility for payment of attorney fees rested with the beneficiary. The court viewed the motion for adjudication of the lien as an independent action by the attorney, and held that despite the language of Bishop's plan, the attorney was entitled to a fee from the common fund created for the benefit of reimbursing the plan. The court found that the attorney who settled Bishop's case from which the plan would be reimbursed "simply invoked his

8

quasi-contractual right to payment of fees for services rendered in recovering the plan's subrogation lien. The quasi-contractual obligation he [sought] to impose upon the Trustees arises independently of the benefit plan, resting instead upon equitable considerations of *quantum meruit* and the prevention of unjust enrichment." (Internal quotation marks omitted.) *Bishop*, 198 Ill. 2d at 504, 764 N.E.2d at 31. The Illinois Supreme Court affirmed the trial court's reduction of the plan's reimbursement by one-third to account for attorney fees and ordered reimbursement of costs incurred in the personal injury action.

¶ 14 Here, as in *Bishop*, the intent of Miller's Plan was clearly designed to shift the liability for payment of attorney fees to the beneficiary, where the beneficiary took action to hold a third party liable for damages. As previously stated, the plaintiff was not a party to the Plan contract, nor did the signature of one of its attorneys on the "Subrogation Agreement–Right To Reimbursement" form create a contract between the plaintiff and the Plan. The agreement requested Miller, not the plaintiff, to honor the terms of the Plan. The plaintiff, through the signature of one of its attorneys, simply acknowledged the Plan's subrogation requirement. From the language of the agreement, the plaintiff did not agree to take any action on behalf of the Plan. The plaintiff never agreed to waive its right to *quantum meruit*, and it certainly did not agree to unjustly enrich the Plan. But for the efforts of the plaintiff, there would have been no fund from which the Plan could have obtained reimbursement from Miller. Indeed, the plaintiff successfully obtained a settlement that allowed for a 100% reimbursement of the benefits paid to Miller. Given that the common fund doctrine rests upon the perception that

9

persons who obtain the benefit of a lawsuit without contributing to its costs are unjustly enriched (*Bishop*, 198 Ill. 2d at 509, 764 N.E.2d at 33), and given that ERISA does not preempt application of the common fund doctrine, the plaintiff had the right to pursue its claim in state court under the Illinois common fund doctrine. Therefore, the trial court properly entered summary judgment in favor of the plaintiff, granting the plaintiff one-third of the monies recovered for the fund and costs incurred for the successful pursuit of the litigation. To deny the plaintiff this remedy would have unjustly enriched the Plan, allowing it to prey, like a parasite, on the efforts of its host, enjoying the fruits of the reward without any effort.

¶ 15 Finally, the defendants have directed our attention to *US Airways, Inc. v. McCutchen*, 569 U.S. ___, ___, 133 S. Ct. 1537, 1547 (2013), arguing that this 5-4 decision of the United States Supreme Court clearly holds "that the terms of the plan document [can] not be altered by equitable doctrines." In our judgment, the defendants have exceeded the limits of the Supreme Court's ultimate holding, as the issue in *McCutchen* is distinguishable from the case before us. McCutchen was severely injured when a driver lost control of her car, crossed the median, and struck the automobile driven by McCutchen. There was limited insurance carried by the at-fault driver, and because the accident killed or seriously injured three other people, McCutchen received only $10,000 from the at-fault driver's insurance. However, McCutchen successfully made a claim against his own carrier for the maximum amount of $100,000. After paying attorney fees of $44,000, McCutchen was left with $66,000. McCutchen had been covered by an ERISA plan through his employer, U.S. Airways, Inc. Upon learning

10

of McCutchen's recovery, U.S. Airways' plan administrator demanded reimbursement in the amount of $66,866.66, which had been paid in medical expenses–more than McCutchen had actually recovered after deduction of attorney fees. The plan administrator made no adjustment in the demand for deduction of attorney fees. McCutchen denied the plan was entitled to any reimbursement. The plan administrator therefore sued McCutchen, its beneficiary, for reimbursement.

¶ 16   Given that ordinary rules of contract construction are used to determine the intent of an ERISA plan, the Supreme Court in *McCutchen* held that in the absence of a contrary agreement, the common-fund rule would govern. The Supreme Court described the common fund doctrine as having "deep roots in equity," as being "set in the soil of unjust enrichment: To allow 'others to obtain full benefit from the plaintiff's efforts without contributing [***] to the litigation expenses *** would be to enrich the others unjustly at the plaintiff's expense.' " *McCutchen*, 569 U.S. at ___, 133 S. Ct. at 1547 (quoting *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 392 (1970)).  Indeed, the Court recognized that the overwhelming majority of state courts have "routinely use[d] the common-fund rule to allocate the costs of third-party recoveries between insurers and beneficiaries." *McCutchen*, 569 U.S. at ___, 133 S. Ct. at 1550.  After all, "[t]hird-party recoveries do not often come free: To get one, an insured must incur lawyer's fees and expenses.  Without cost sharing, the insurer free rides on its beneficiary's efforts–taking the fruits while contributing nothing to the labor." *McCutchen*, 569 U.S. at ___, 133 S. Ct. at 1550.  The Court then stated that "if U.S. Airways wished to depart from the well-established common-fund rule, it had to draft its contract to say so–and here it did not."

*McCutchen*, 569 U.S. at ___, 133 S. Ct. at 1548. In light of the plan's silence on the recovery of attorney fees, the Court applied the common fund doctrine to the U.S. Airways plan and remanded the case to the district court for a determination of how much the plan should pay in attorney fees.

¶ 17 Unlike *McCutchen*, where the plan was silent on the payment of attorney fees, the plan in *Bishop* was quite clear: "The Plan does not pay for nor is responsible for the participant's attorney's fees. Attorney's fees are to be paid solely by the participant." (Internal quotation marks omitted.) *Bishop*, 198 Ill. 2d at 500, 764 N.E.2d at 28-29. Despite the clear language of the plan in *Bishop*, our supreme court expressly stated that "the quasi-contractual right to payment of fees for services rendered belongs to the attorney who rendered the services and does not affect the contractual relationship between the plan participant and the plan." *Bishop*, 198 Ill. 2d at 504, 764 N.E.2d at 31. Unlike *McCutchen*, this case is an independent action filed by the Millers' attorney against the Plan and its trustees. Miller has already reimbursed the Plan 100% of the monies paid to Miller. Therefore, pursuant to *Bishop*, we conclude that the plaintiff is entitled to its one-third share of the monies recovered for the fund for payment of its attorney fees and costs. We recognize that the *dicta* of *McCutchen* may foreshadow a different result than our supreme court has pronounced in the past. Given the strong and clear pronouncements of our supreme court, however, we are unwilling to adopt such an interpretation of *McCutchen* that could lead to the demise of a deeply rooted equitable remedy in Illinois, the common fund doctrine, with respect to self-funded employee benefit plans.

12

¶ 18    For the foregoing reasons, we affirm the judgment of the circuit court of Madison

County.


¶ 19    Affirmed.

2015 IL App (5th) 130413

NO. 5-13-0413

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| SCHREMPF, KELLY, NAPP & DARR, LTD., | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Madison County. |
| | ) | |
| v. | ) | No. 09-MR-745 |
| | ) | |
| THE CARPENTERS' HEALTH AND WELFARE | ) | |
| TRUST FUND and THE TRUSTEES OF THE | ) | |
| CARPENTERS' HEALTH AND WELFARE TRUST | ) | |
| FUND OF ST. LOUIS, | ) | Honorable |
| | ) | Barbara L. Crowder, |
| Defendants-Appellants. | ) | Judge, presiding. |

_____

**Rule 23 Order Filed:**     May 26, 2015
**Motion to Publish Granted:**     July 8, 2015
**Opinion Filed:**     July 8, 2015

_____

**Justices:**     Honorable Judy L. Cates, P.J.

Honorable Richard P. Goldenhersh, J., and
Honorable S. Gene Schwarm, J.,
Concur

_____

**Attorneys**     John C. Grellner, 5205 Lindenwood Avenue, St. Louis, MO 63109;
**for**     James E. Robertson, Millar, Schaefer, Hoffmann & Robertson, 230 South
**Appellants**     Bemiston, Suite 1110, Clayton, MO 63105

_____

**Attorney**     Lanny H. Darr II, Schrempf, Kelly, Napp & Darr, Ltd., 307 Henry
**for**     Street, Suite 415, P.O. Box 725, Alton, IL 62002
**Appellee**

_____