# Illinois Official Reports

## Appellate Court

---

**_Parente & Norem, P.C. v. Chicago Regional Council of Carpenters Welfare Fund_, 2021 IL App (1st) 200340**

---

| | |
|---|---|
| Appellate Court Caption | PARENTE & NOREM, P.C., Plaintiff-Appellant, v. CHICAGO REGIONAL COUNCIL OF CARPENTERS WELFARE FUND, and TRUSTEES OF THE CHICAGO REGIONAL COUNCIL OF CARPENTERS WELFARE FUND, Defendants-Appellees. |
| District & No. | First District, Third Division No. 1-20-0340 |
| Filed | June 30, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 2017-CH-07944; the Hon. Anna M. Loftus, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Christopher M. Norem and Cole H. Munvez, of the Law Offices of Parente & Norem, P.C., of Chicago, for appellant. Daniel E. Quist, of McGann Ketterman & Rioux, Ltd., of Chicago, for appellees. |
| Panel | JUSTICE McBRIDE delivered the judgment of the court, with opinion. Justices Ellis and Burke concurred in the judgment and opinion. |

**OPINION**

¶ 1    Carlos R. Pike paid $136,410 to the personal injury law firm of Parente & Norem, P.C. (Parente & Norem), pursuant to an attorney-client agreement obligating Pike to pay 40% of the $295,000 settlement that the law firm obtained and 100% of the $18,410 litigation costs that the law firm incurred representing Pike after he was injured in a motor vehicle accident. Pike next reimbursed the "ERISA"[1] fund of his carpenters' union the $165,950.61 it had advanced him to cover his medical and disability expenses until his personal injury suit resolved. These funds had been voluntarily advanced to Pike only pursuant to a plan document and express contract stating that he would reimburse the organization, waive the common fund doctrine, hire an attorney who would waive the common fund doctrine, and pay 100% of the attorney fees and litigation expenses. At issue on appeal is Parente & Norem's suit to obtain $61,453.53 in additional compensation out of Pike's payment to the ERISA organization, which is known as the Chicago Regional Council of Carpenters Welfare Fund, and the Trustees of the Chicago Regional Council of Carpenters Welfare Fund (collectively Welfare Fund or fund). The circuit court granted the Welfare Fund's motion to dismiss Parente & Norem's complaint with prejudice. Parente & Norem contends that under the common fund doctrine, the law firm is equitably entitled to 33% of Pike's reimbursement to his trade union and an additional 33% of the law firm's litigation expenses. By our calculations, these additional amounts would bring the law firm's compensation to 59% of the personal injury settlement and 133% of the litigation expenses.

¶ 2    When the circuit court dismissed Parente & Norem's complaint with prejudice on January 21, 2020, the court included language that permitted an interlocutory appeal pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016) and held a third-party claim in abeyance pending the outcome of an appeal. Parente & Norem filed its notice of appeal on February 18, 2020. Accordingly, the dismissal order is an appealable order that we have jurisdiction to review.

¶ 3    The common fund doctrine has been described as follows:

      " 'The common fund doctrine is an exception to the general American rule that, absent a statutory provision or an agreement between the parties, each party to litigation bears its own attorney fees and may not recover those fees from an adversary. [Citation.] The doctrine provides that " ' a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole.' " [Citation.] Underlying the doctrine is the equitable concept that the beneficiaries of a fund will be unjustly enriched by the attorney's services unless they contribute to the costs of the litigation. [Citations.]' " *Stefanski v. City of Chicago*, 2015 IL App (1st) 132844, ¶ 18, 28 N.E.3d 967 (quoting *Wendling v. Southern Illinois Hospital Services*, 242 Ill. 2d 261, 265, 950 N.E.2d 646 (2011)).

---

[1]"ERISA" is an acronym for the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* (2012), which is a federal tax and labor law that establishes minimum standards for pension plans in private industry in order to protect the interests of plan participants and their beneficiaries. *Employee Retirement Income Security Act (ERISA)*, U.S. Dept. of Labor, https://www.dol.gov/general/topic/retirement/erisa (last visited June 24, 2021) [https://perma.cc/2SZW-PNRK].

¶ 4          The Welfare Fund is a multiemployer, self-funded ERISA employee welfare benefit plan (see 29 U.S.C. §§ 1002(1), (37) (2012)), which is nonprofit and tax-exempt. Pike is a covered individual and a participant in the plan.

¶ 5          The plan document in effect when Pike's vehicle was struck by a semi-trailer truck in 2012 stated as follows:

"The Fund provides no benefits for claims related to any injury or illness which is caused by third parties *** for a Covered Individual. The Fund will deny any claim for an injury or illness which is caused by third parties *** except as otherwise provided in this section.

If the Fund pays benefits for the injuries and illnesses caused by third parties ***, a Covered Individual:

1. Agrees to reimburse the Fund up to the amount of benefits paid by this Fund and any future benefits to be paid from any recovery received from any third parties (including persons, insurance carriers, corporations or other entities) or from any no fault coverage, uninsured motorist coverage, Employers Workers' Compensation insurance policies, other insurance policies, Funds or other sources of recovery (hereinafter collectively referred to as 'Coverage');

* * *

3. Agrees to enter into a subrogation and reimbursement agreement. A Covered Individual must comply with all of the terms of the subrogation and reimbursement agreement that the Fund gives to him/her, including the establishment of a trust for the benefit of the Welfare Fund.

    a. Even if a Covered Individual does not sign a subrogation and reimbursement agreement, this does not change the Fund's rights to subrogation and reimbursement as stated in this section;

4. Grants the Fund a First Priority Right security interest and a lien in any recovery received from any third party or from any Coverage received whether or not such recovery is designated as payment for medical expenses on account of such accident or illness;

5. Waives the common [f]und doctrine and agrees to hire an attorney who will also waive the common [f]und doctrine. This means that a Covered Individual agrees to be solely and exclusively responsible for any and all attorneys' fees, court costs and expenses involved in obtaining any recovery or any Coverage;

* * *

7. Agrees not to settle any claim which compromises the Fund's right of subrogation without the written consent of the Fund[.]"

¶ 6          Accordingly, as a precondition for payment of expenses related to Pike's accident, he executed a document entitled "Trust and Subrogation/Reimbursement Agreement for Third Party Causation" (reimbursement agreement) that mirrored the terms of the plan document. In this contract, Pike agreed to grant the Welfare Fund an equitable lien on any recovery, waive the common fund doctrine, and assume responsibility for all attorney fees and costs incurred in pursuit of his claim against the other driver. In pertinent part, the reimbursement agreement stated:

"5. Claimant acknowledges that if there is a settlement entered into between Claimant, the Third Party and/or the Insurer or if there is an adjudication that Claimant is entitled to compensation from the Third Party as a result of the injury or illness described in Exhibit A, Claimant's injury and/or illness are excluded from coverage under the Welfare Fund and that the Welfare Fund is entitled to full reimbursement for the benefits that it has paid to or on behalf of the Claimant.

* * *

11. Notwithstanding anything contained herein to the contrary, the parties hereto waive the common fund doctrine, which means that no attorneys' fees or costs whatsoever may be deducted by the Claimant or Attorney from the amount reimbursed to the Fund pursuant to the terms of this Agreement."

¶ 7 The Welfare Fund subsequently paid $165,950.61 in medical and disability benefits covering the injuries Pike sustained in the accident.

¶ 8 Meanwhile, Parente & Norem represented Pike in an action that proceeded in the Northern District of Illinois in which Pike sued the owner of the semi-truck and its driver, *Pike v. Premier Transportation & Warehousing, Inc.*, No. 13-CV-8835 (N.D. Ill.). The Welfare Fund sent Parente & Norem a letter giving notice of the fund's right to reimbursement pursuant to the plan document as well as Pike's execution of the reimbursement agreement. In late 2016, Pike's tort suit settled for $295,000. Pursuant to the attorney-client agreement between Parente & Norem and Pike, the law firm was paid 40% of the $295,000, which was $118,000, and 100% of its $18,410 in litigation costs, for compensation totaling $136,410.

¶ 9 In early 2017, the federal district court denied Pike's motion to strike or reduce the lien or right of reimbursement which he owed to the Welfare Fund. *Pike v. Premier Transportation & Warehousing, Inc.*, No. 13-CV-8835, 2017 WL 951323 (N.D. Ill. Mar. 10, 2017). Among other things, the federal court ruled that the common fund doctrine had no impact on Pike's obligation to the Welfare Fund. Pike reimbursed the $165,950.61 that he owed to the Welfare Fund.

¶ 10 Parente & Norem then filed the instant suit in Illinois state court, alleging it had created a common fund that benefited the Welfare Fund and that it would be inequitable for the Welfare Fund to retain its reimbursement of the $165,950.61 without contributing a *pro rata* share for Parente & Norem's work. Parente & Norem sought one-third of the $165,950.61 reimbursement and one-third of the $18,410 in litigation costs. Thus, in addition to the $136,410 it had received from Pike, the law firm sought an additional $61,453.53 from the Welfare Fund, consisting of one-third of the $165,950.61 reimbursement, which was $55,316.87, and one-third of the $18,410 in litigation costs, which the law firm calculated was $6,136.66.

¶ 11 The Welfare Fund filed a third-party action against Pike, alleging breach of contract, promissory estoppel, and a right to indemnification for Parente & Norem's claim.

¶ 12 The Welfare Fund also filed a motion pursuant to section 2-619.1 of the Code of Civil Procedure (Code) to dismiss Parente & Norem's complaint. 735 ILCS 5/2-619.1 (West 2018). Section 2-619.1 permits a party to file a motion to dismiss that combines a motion under section 2-615 (735 ILCS 5/2-615 (West 2018)) and a motion under section 2-619 of the Code (735 ILCS 5/2-619 (West 2018)), provided these two types of arguments are separated into two distinct parts. 735 ILCS 5/2-619.1 (West 2018). Sections 2-615 and 2-619 allow for dismissal

under entirely different legal theories. A section 2-615 argument to dismiss challenges the legal sufficiency of a complaint by arguing that it fails to state a claim upon which relief can be granted. *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429, 856 N.E.2d 1048 (2006); *Zahl v. Krupa*, 365 Ill. App. 3d 653, 658, 850 N.E.2d 304 (2006). In contrast, a section 2-619 argument to dismiss admits to the legal sufficiency of the complaint but raises a defense that purportedly defeats the plaintiff's action. *Patrick Engineering, Inc. v. City of Naperville*, 2012 IL 113148, ¶ 31, 976 N.E.2d 318; *Zahl*, 365 Ill. App. 3d at 658.

¶ 13    In its written motion, the Welfare Fund argued multiple grounds for dismissal, beginning with a failure to factually state a claim, as Parente & Norem had not alleged it was denied its full payment from the $295,000 settlement. See 735 ILCS 5/2-615 (West 2018). In the alternative, the Welfare Fund argued equitable theories, including (1) issue preclusion (collateral estoppel) and/or claim preclusion (*res judicata*), as the same issue had been decided in federal court; (2) that the plan document indicated attorney fees could not be shifted to the Welfare Fund and this fact negated any allegation by Parente & Norem that the Welfare Fund was being unjustly enriched; and (3) that Parente & Norem had unclean hands for its failure to repudiate the plan document while accepting the benefit of the funds advanced to its client. See 735 ILCS 5/2-619 (West 2018).

¶ 14    We cannot summarize what was argued at the first of two hearings regarding the motion to dismiss because the record on appeal does not include a hearing transcript, bystander's report, or agreed statement of facts. It is undisputed, however, that during the first hearing (1) Parente & Norem admitted that it had received the full amount it was owed pursuant to its attorney-client agreement with Pike, and (2) the circuit court requested supplementary briefs to clarify the nature of the common fund doctrine.

¶ 15    During the second hearing, Parente & Norem was represented by Christopher M. Norem and Cole H. Munvez. When questioned by the court, Munvez confirmed the court's recollection that at the earlier hearing, Parente & Norem had admitted to receiving all the attorney fees it was entitled to receive pursuant to its attorney-client contract with Pike. Under further questioning, Norem confirmed that Pike reimbursed Parente & Norem for all its litigation costs. The second hearing transcript also shows that the circuit court was persuaded by the Welfare Fund's section 2-615 argument regarding the law firm's inability to allege a common fund claim upon which relief could be granted. The circuit court did not reach any of the Welfare Fund's section 2-619 arguments regarding the equities of granting the relief requested, such as the argument that the Welfare Fund was not being unjustly enriched by its retention of its full reimbursement from Pike rather than contributing to the attorney fees and costs. The court stated the following:

> "The common fund doctrine dictates that plaintiff's attorney has a right to obtain a reasonable attorney's fee from the fund as a whole. The common fund doctrine allocates fees and costs proportionally based upon the beneficiary's respective share of the settlement proceeds. That's *Baier v. State Farm*, pincite 123.
>
> An attorney that has been fully compensated from the fund has no valid common fund doctrine claim. That's *Lemmer v. Karp*. Also is the premise in *Stefanski v. City of Chicago*.
>
> Although not pleaded in its complaint, plaintiff acknowledged receiving its full 40 percent contingency fee [of $118,000] from its client, Mr. Pike, pursuant to its retainer agreement, as well as its costs [totaling $18,410]. ***

Plaintiff then paid $165,950.61 of that same [$]295,000 settlement to the Fund. Here, plaintiff alleges that pursuant to the common fund doctrine, it is entitled to *** one-third of the recovery of $165,950.61 obtained for the fund, plus *** one-third of the cost[s], *** in addition to the 40 percent of the whole settlement of [$]295,000 it has already received from Pike.

Plaintiff claims the common fund doctrine provides that it is to receive its full contingency fee from the full settlement pursuant to its retainer agreement, and then another one-third of the portion of the settlement that was returned to the Fund. This double recovery is not supported by the case law addressing [the] common fund doctrine.

\* \* \*

The plaintiff argues that the retainer agreement specifically provides that in addition to its contingency fee agreement where it was to receive 40 percent of any recovery, it could separately seek additional attorney's fees pursuant to the common fund doctrine from the Fund. This language in the retainer agreement is not consistent with how the common fund [doctrine] works, but moreover, the statement and a retainer agreement cannot create a right where none exists.

To recover from the Fund, plaintiff must allege it has not already recovered its full attorney's fees in the amount of 40 percent of the settlement, which it was contained in the retainer agreement. Since plaintiff admitted during argument to receiving 40 percent of the entire settlement amount of [$]295,000 from Pike pursuant to that agreement, [this compensation] bars any recovery of *** attorney's fees and costs from the Fund, [and] the dismissal will be with prejudice, no opportunity to replead.

And I should revise that in saying that receiving 40 percent of the entire settlement amount of 295 from Pike, along with the costs of the suit, then that bars any recovery of fees or costs from the Fund. And therefore, the dismissal will be with prejudice."

¶ 16    After dismissing Parente & Norem's complaint with prejudice, the circuit court held the Welfare Fund's third-party action against Pike in abeyance pending this appeal.

¶ 17    The hearing transcript discloses that the circuit court's consideration and ruling was limited to the section 2-615 argument that Parente & Norem could never allege a common fund claim because it had already been fully compensated for its representation and reimbursed for its litigation expenses, pursuant to its contract with Pike. The circuit court did not reach the alternative arguments that the Welfare Fund presented under section 2-619 (that even assuming *arguendo* Parente & Norem had stated a cause of action, it would be inequitable to grant the claim, because (1) the common fund doctrine argument had already been rejected by the federal district court, (2) the plan document indicated attorney fees could not be shifted to the Welfare Fund, and (3) Parente & Norem had unclean hands because it did not repudiate the plan document while accepting the benefit of the funds advanced to its client pursuant to that document).

¶ 18    On appeal, Parente & Norem mistakenly contends, "The trial court dismissed Parente & Norem's Complaint pursuant to 2-619, ruling that Parente & Norem was unjustly enriched." Parente & Norem then cites only section 2-619 authority, namely, *Doyle v. Holy Cross Hospital*, 186 Ill. 2d 104, 109, 708 N.E.2d 1140 (1999), and *Beetle v. Wal-Mart Associates, Inc.*, 326 Ill. App. 3d 528, 531, 761 N.E.2d 364 (2001). See *Doyle*, 186 Ill. 2d at 109 ("The

- 6 -

trial court dismissed the amended complaint under section 2-619(a)(9) of Code of Civil Procedure, which permits the dismissal of an action when 'the claim asserted *** is barred by other affirmative matter avoiding the legal effect of or defeating the claim.' " (quoting 735 ILCS 5/2-619(a)(9) (West 1996))); *Beetle*, 326 Ill. App. 3d at 531 ("The purpose of a motion to dismiss under section 2-619 is to dispose of issues of law and easily proved issues of fact.").

¶ 19 Our review of the record reveals that the dismissal was plainly for failure to state a claim, which is a dismissal pursuant to section 2-615, rather than section 2-619 of the Code. 735 ILCS 5/2-615, 2-619 (West 2018). We could conclude that Parente & Norem waived appellate review by failing to cite appropriate authority. See Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018) (requiring opening brief to include reasoned argument and citation to relevant authority and indicating points not argued are waived and shall not be subsequently raised). However, we choose not to find waiver, and we will limit our review to the circuit court's actual grounds for dismissal—the Welfare Fund's section 2-615 argument.

¶ 20 A section 2-615 argument to dismiss challenges the legal sufficiency of a complaint by arguing that it fails to state a claim upon which relief can be granted. *Marshall*, 222 Ill. 2d at 429; *Zahl*, 365 Ill. App. 3d at 658. When ruling on a section 2-615 argument, the court will accept as true all well-pled allegations, liberally construe them, and draw all reasonable inferences in the plaintiff's favor. *Patrick Engineering*, 2012 IL 113148, ¶ 31; *Zahl*, 365 Ill. App. 3d at 658. However, because Illinois is a fact-pleading jurisdiction, the court cannot accept as true mere conclusions that are unsupported by specific facts. *Patrick Engineering*, 2012 IL 113148, ¶ 31. Our review of a dismissal under section 2-615 is *de novo*. *Patrick Engineering*, 2012 IL 113148, ¶ 31.

¶ 21 A common fund doctrine claim is "a separate and distinct action [brought by an attorney] against [a third party] for *unpaid* fees." (Emphasis added.) *Scholtens v. Schneider*, 173 Ill. 2d 375, 390, 671 N.E.2d 657, 665 (1996). In other words, in order to state a common fund doctrine claim, the attorney must not have been fully compensated before filing the suit as Parente & Norem was fully compensated before it filed the instant suit against the Welfare Fund. In *Lemmer v. Karp*, 56 Ill. App. 3d 190, 192, 371 N.E.2d 655, 657 (1977), an insured attempted to assert the common fund doctrine against its insurer. The court determined, however, "plaintiff cannot assert the 'fund doctrine' because his attorney has already been compensated in full for his services out of the whole fund." *Lemmer*, 56 Ill. App. 3d at 192. Parente & Norem has no claim for attorney fees against the Welfare Fund because the law firm was fully paid for its services, and the common fund doctrine can only be asserted to recover unpaid attorney fees. *Scholtens*, 173 Ill. 2d at 390. In *Stefanski*, an insured plaintiff, as the class representative of all insureds, wanted to assert the common fund doctrine against the City of Chicago employee health insurance fund. *Stefanski*, 2015 IL App (1st) 132844, ¶ 1. The main holding in *Stefanski* is that the client had no recourse under this theory, because the common fund doctrine is solely an attorney's claim to his or her fees, not a client's claim. *Stefanski*, 2015 IL App (1st) 132844, ¶ 31. But pertinent here is the court's observation that "plaintiff's attorney was in fact paid a full one-third fee on the total $18,000 recovery plaintiff obtained from the tortfeasor" and that because there was no "detriment [to] plaintiff's attorney where the attorney has already been fully compensated," "there is simply no valid common fund claim for plaintiff to take over from her attorney." *Stefanski*, 2015 IL App (1st) 132844, ¶ 47. Thus, the law indicates an attorney cannot maintain an action for fees if the attorney has already been fully compensated.

¶ 22    The court also addressed the equitable underpinning of the client's common fund claim:

> "We *** reject plaintiff's contention that it would be 'unjust' for the City to retain the 'benefit' it received due to plaintiff's recovery from the third-party tortfeasor—*i.e.*, complete recovery of its subrogation claim without contributing to plaintiff's attorney fees—where the explicit contractual agreement between plaintiff and the City called for just such a result. Rather, the 'justness' of this result was succinctly explained in *Administrative Committee of the Wal-Mart Stores, Inc. Associates' Health & Welfare Plan v. Varco*, 338 F.3d 680, 692 (7th Cir. 2003), where the court reasoned:
>
> > '[M]ost covered persons—if given an option—would readily give up a "common fund-type" reduction in exchange for having their medical expenses paid up-front in third-party liability situations instead of refusing the benefits (and therefore not having to reimburse the plan) and paying their medical expenses out of their settlement. *** In this case, plan participants have traded the possibility of having the Plan participate in attorney's fees for the guarantee that medical bills will be paid immediately.' " *Stefanski*, 2015 IL App (1st) 132844, ¶ 37.

¶ 23    The proper application of the common fund doctrine is demonstrated by considering the figures in a factually analogous case, *Schrempf, Kelly, Napp & Darr, Ltd. v. Carpenters' Health & Welfare Trust Fund*, 2015 IL App (5th) 130413, 35 N.E.3d 988, in which personal injury attorneys recovered a $500,000 settlement for a husband and wife who were participants of the St. Louis Carpenters Welfare Plan. Parente & Norem contends that *Schrempf* supports its appeal. In its supplemental brief in support of its motion to dismiss Parente & Norem's complaint, however, the Welfare Fund dispelled this belief by providing extensive analysis and detail about *Schrempf*, including documents prepared in that case, such as the statement of settlement and distribution of settlement proceeds executed by the clients and their attorney.

¶ 24    Like Pike, the husband had been injured due to the act or omission of a third-party tortfeasor. *Schrempf*, 2015 IL App (5th) 130413, ¶ 1. The St. Louis Carpenters Welfare Plan had paid $86,709.73 in medical claims stemming from the injury and asserted a reimbursement interest on the settlement proceeds. *Schrempf*, 2015 IL App (5th) 130413, ¶ 5. Before payment of attorney fees, the share of the $500,000 gross settlement allocated to the St. Louis welfare plan would be $86,709.73, and the share allocated to the St. Louis clients would be $413,290.27. According to the statement of settlement and distribution of settlement proceeds that was attached to the Welfare Fund's supplemental brief, the *Schrempf* attorneys took one-third of the clients' $413,290.27 share as payment, $137,763.41, then distributed the remaining $275,006.76 to their clients. The attorneys did not take one-third of the entire $500,000 settlement—$166,666—before remitting payment to the clients. Then, the *Schrempf* attorneys reimbursed the welfare plan the full amount of its reimbursement interest, $86,709.73, without any deduction for attorney fees or costs. *Schrempf*, 2015 IL App (5th) 130413, ¶ 5. The statement of settlement and distribution of settlement proceeds also discloses that the attorneys originally held one-third of the $86,709.73 in trust while negotiating with the St. Louis welfare fund over its payment of fees. The attorneys later remitted the full amount to the welfare fund before filing suit. *Schrempf*, 2015 IL App (5th) 130413, ¶ 5. The *Schrempf* attorneys paid themselves only for the recovery they obtained for their clients—$413,290.27—not the entire settlement fund—$500,000. In the lawsuit against the welfare plan, the *Schrempf* attorneys sought payment of one-third of the welfare fund's lien interest, or $28,903.25. *Schrempf*, 2015 IL App (5th) 130413, ¶ 5. Those attorneys successfully showed that they had a detriment of

$28,903.25 attributable to the welfare fund. *Schrempf*, 2015 IL App (5th) 130413, ¶ 18. The subrogation agreement in that case made no mention, specifically, of attorney fees or placed any obligations on the attorneys, other than acknowledgment of the terms of the subrogation agreement. *Schrempf*, 2015 IL App (5th) 130413, ¶ 4. This contrasts with the reimbursement agreement which Pike signed, specifying: "Notwithstanding anything contained herein to the contrary, the parties hereto waive the common fund doctrine, which means that no attorneys' fees or costs whatsoever may be deducted by the Claimant or Attorney from the amount reimbursed to the Fund pursuant to the terms of this Agreement." The *Schrempf* attorneys did not pay themselves a full one-third of the settlement, and then seek an additional one-third of the lienholder's interest, like Parente & Norem is doing here. The law firm accepted only one-third of the client's share of the settlement, and then successfully asserted the common fund doctrine against the welfare fund for the welfare fund's share of the settlement. The *Schrempf* attorneys were fully compensated by a combination of payments from the client and the welfare fund. Those attorneys did not receive full compensation and then some.

¶ 25    *Schrempf* is directly at odds with how Parente & Norem set up its claim against the Welfare Fund. Parente & Norem first paid itself a full 40% of the gross settlement proceeds. Thus, there are no unpaid fees to seek from the Welfare Fund. Parent & Norem is seeking a second recovery of fees, essentially a bonus payment, from the Welfare Fund, in addition to the 40% to which it was contractually entitled and received. Parente & Norem's reliance on *Bishop v. Burgard*, 198 Ill. 2d 495, 764 N.E.2d 24 (2002), is similarly misplaced as the opinion does not indicate that the attorneys received a bonus in addition to their full compensation for representing an ERISA plan participant who was injured in an automobile accident with a third-party.

¶ 26    Parente & Norem was fully compensated before it filed the instant suit. The common fund doctrine supports an award of only unpaid fees and costs and is not a basis for obtaining additional compensation. The doctrine does not support Parente & Norem's claim.

¶ 27    Moreover, the attorney-client agreement that Parente & Norem drafted and executed with Pike did not create the right for the attorneys to receive more than 40% of the proceeds of Pike's lawsuit. The circuit court succinctly remarked:

> "[The] retainer agreement specifically provides that in addition to its contingency fee agreement where [Parente & Norem] was to receive 40 percent of any recovery, it could separately seek additional attorney's fees pursuant to the common fund doctrine from the Fund. This language in the retainer agreement is not consistent with how the common fund [doctrine] works, but moreover, the statement and a retainer agreement cannot create a right where none exists."

¶ 28    Parente & Norem's complaint failed for these reasons under section 2-615. 735 ILCS 5/2-615 (West 2018).

¶ 29    We conclude that Parente & Norem failed to state a claim upon which relief could be granted under the common fund doctrine and that the circuit court's dismissal with prejudice was a correct ruling. We affirm.

¶ 30    Affirmed.